### NORTHCUTT v. ALLEN et al.

(Court of Civil Appeals of Texas. Dallas. June 1, 1912. Rehearing Denied June 1, 1912.)

1. LANDLORD AND TENANT (§ 128*) — CONTRACTS—OBLIGATION OF TENANT.

Where a tenant, with knowledge of the refusal of a third person to vacate a part of the land, took possession of the remainder, without notifying the landlord of the facts, and cultivated the same, though the tenant was informed by the owner that he had never leased any part of the land to the third person, and knew that the landlord was ignorant of the facts, he took possession at his peril, and could not complain of a verdict for the owner for an amount which was such proportion of the sum agreed to be paid as the land cultivated by the tenant bore to the entire premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 448, 449; Dec. Dig. § 128.*]

2. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Where the jury rendered its verdict pursuant to a correct part of the charge, the error, if any, of another portion thereof was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

Appeal from Hunt County Court; Geo. B. Hall, Judge.

Action by L. W. Allen and others against Arch Northcutt. From a judgment for plaintiffs, defendant appeals. Affirmed.

Evans & Carpenter, of Greenville, for appellant. J. G. Matthews, of Greenville, for appellees.

RASBURY, J. Appellant, Arch Northcutt, claimed a rental contract with one Bud Patton for about 30 acres of land in Hunt county for the year 1910. Appellees inherited the land from Patton subsequent to its rental to Northcutt. The price to be paid for the land was $40. Appellant refused to pay the agreed rental, and appellees, the owners of the land, sued him therefor.

[1] The agreement for the rental of the land was reached by correspondence between appellant and Patton, who was a resident of Arkansas. On this point appellant testified: "I am the defendant in this cause. About the latter part of December, 1909, or the 1st of January, 1910, I wrote Bud Patton, at Lewisville, Arkansas, about the renting of the Bud Patton place for the year 1910. On the 17th of January he wrote me the following letter in reply to the one I wrote him, which letter is as follows:

" 'Lewisville, Arkansas, 1/17/1910.

" 'Mr. W. A. Northcutt, Wills Point, Texas —Dear Sir: I will answer your letter which was written on the 1/2. Have been sick so that I could not attend to anything. Your letter I write you in regard to the place— you say you want to rent it. I have been offered $50.00 for the rent of the place. If you will fix the west part of the fence and open the ditches you can have it for $40.00 rent. I would come out there but my health is so bad that I can't come. Now you said that I may have to have it surveyed out again and if you think so you get a surveyor to survey it out. You write to the parties that owns the Husso land at Dallas, Texas, about that old man putting the fence on this land. If you have the land surveyed out and it takes his fence don't let him move it. Keep it and if you want the place let me hear from you at once. I will be out there in the fall. My health has been very bad for some time. Ora has married and gone to Oklahoma. Resp't, Bud Patton.'

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

"Shortly after receiving this letter, I wrote again, telling him that I accepted his proposition and would take the land, and that I wanted the use of all of the cultivated land, and also informed him that a Mr. Harrell (or Hearld) had run a fence across the land, so as to take in part of the cultivated land, and in reply to that letter I received one from him, dated February 22, 1910, as follows:

"'Lewisville, Ark. 2/22/1910.

"'Mr. W. A. Northcutt, Wills Point, Texas —Dear Sir and Friend: Your letter of the 11th and 16th received and contents noted and in reply will say that I have not rented or given Mr. Hearld (or Harrell) any lease on any part of my land and if he has fenced any of it or is attempting to cultivate any part of it tell him to move his fence and to vacate the land at once. You take the land at said figures and put such fencing on it as it needs and take costs of wire from rent but building fence and cleaning of ditches must be at your expense so I will make you sole agent of the place for the year 1910, and if there are any land that has grown up in bushes that you want to take in you can have all you (make) on it so I will leave the matter with you. Your friend forever, B. P. Patton, by Berry Patton.'

"I called on Mr. Harrell (Hearld) and told him to move his fence, or let me have the use of the land, and he threatened me with violence if I ever bothered him about it. I consulted counsel, and upon their advice let him alone. The portion of the place cultivated by Harrell was much better land than that cultivated by me. I raised on the part cultivated by me about 21 or 22 wagon loads of corn, averaging about 20 bushels to the load. I expected the rents from the land referred to in the letter testified about, and so advised Mr. Patton. I never received possession or had the use of the land inclosed and cultivated by Mr. Harrell, which amounted to about 9 acres; and that which I had in cultivation was about 21 or 22 acres. I would not have rented any part of it for $40, or for any fixed price; for I did expect and understand that I was to get all of it. I opened the ditches that needed opening; did not build any fences, because there were no fences needed to be built."

The court, upon the foregoing and all other testimony, charged, the jury, among other things, as follows: "If you believe from the evidence that the defendant, Arch Northcutt, was on and did use and cultivate certain land in Hunt county, Texas, as set out in plaintiff's petition, during the year 1910, under a specific contract with Bud Patton for $40 for the whole of the 30 acres of land in controversy herein, and you further find that a Mr. Germany had any part of said land fenced and in his possession at the time of the said contract, and that the said Patton was unable to place the defendant in possession of said part of the said land, then you will find for the plaintiffs for such sum of the amount of the $40 as the amount of the land which the defendant cultivated bears to the whole of the amount of the land rented by defendant."

The jury returned a verdict for appellees, under this portion of the charge, for $28, which was that proportion of the sum agreed to be paid that the land appellant cultivated bore to the entire 30 acres. It was established that appellees had, after employing attorney and having the land surveyed, collected from those occupying the other 9 acres $42.-50. Appellant urges that, since Patton failed to put him in possession of the 9 acres, he is entitled to be credited with whatever sum appellees collected as rental for the remaining portion of the 30 acres. We do not think so. It seems clear from the letters written by Patton and from appellant's testimony that Patton was not informed of the refusal of Harrell to vacate the land. Patton wrote appellant that he had never leased any part of the land to Harrell, and for appellant to notify him to move his fences and vacate the land. Yet, with full knowledge of the facts, and without notifying Patton of Harrell's refusal to vacate the land, appellant, after consulting counsel, took possession of the remaining land and used and cultivated the same. Appellant knew, before he went into possession of the land, that Harrell would not surrender the part he was in possession of, since Harrell, when appellant called upon him, threatened him with violence if he bothered him about it, and he could then have made other arrangements, or at least communicated to Patton his intention to demand the use of the entire tract or its rental value, and afforded him opportunity to dispossess Harrell. Not having done so, and having gone on the land under such circumstances, and with full knowledge that he was to get possession of only a portion of the land, we think he did so at his peril, and is bound thereby. The amount of the verdict, under the testimony, is the least that could have been rendered against him under his agreement in relation to the whole tract, and less than he would have paid, had the jury found there had been no completed contract; and such a verdict could have been sustained under the evidence.

[2] Those assignments of error which complain of certain portions of the court's charge cannot be sustained, since it is patent from the verdict that if they constituted error it was harmless, since the jury must have rendered its verdict upon that portion of the charge quoted above. Nor do the assignments of error, which complain of the action of the court in refusing certain special charges, show any ground for reversal, since they are based on a theory of the case which we have determined against the contentions of appellees.

Finding no reversible error in the record, the judgment of the court below is affirmed.