**GHOLSTON et al. v. COOK. (No. 2783.)**

(Court of Civil Appeals of Texas. Texarkana. June 21, 1923.)

1. **Adverse possession &#8665;65(3)—Unconditional possession, without intent to relinquish upon determination of true owner, gives title.**

That one holds possession of land under the belief that it had not been conveyed to another under a prior conveyance does not affect the legal consequences of his continuous possession unless such possession is conditional; that is, with intent to relinquish it if, on determination of the true boundaries, the land is found to be included in the prior conveyance.

2. **Judgment &#8665;632—Prior judgments in litigation involving particular boundary line held improperly admitted in subsequent action against same defendant.**

In an action to recover land, where the location of a boundary line of a particular survey was in issue, prior judgments against the same defendant involving the location of that boundary held improperly admitted; plaintiff not having been a party to such prior litigation.

Appeal from District Court, Cass County; R. T. Wilkinson, Judge.

Action by Willis Cook against Mrs. Paralee Gholston and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

H. A. O'Neal, of Atlanta, for appellants.
Elmer L. Lincoln, of Texarkana, for appellee.

HODGES, J. The appellee brought this suit to recover 180 acres of land situated in Cass county. The defendants in the suit are Paralee Gholston, the widow of J. S. Ghols-ton, and Martin Gholston, his son. The appellants disclaimed as to all of the land sued for except a tract of about 15 acres situated in the Gholston survey, which they describe by metes and bounds. As to this they plead not guilty, and also set up a claim of title by adverse possession of more than 10 years.

The facts show that in 1902 J. S. Gholston conveyed to the appellee, Cook, the land described in the plaintiff's original petition, which consisted of the 160 acres of the Nall survey and 20 acres out of the Gholston preemption survey. The Nall was an old survey, and its east boundary line was the west boundary line of the Gholston. In describing the 160 acres Gholston's deed called for the east boundary line of the Nall survey. The 20 acres in the Gholston survey were described as follows:

"Beginning at the southwest corner of the William Crabtree survey east of John's creek; thence in a southerly direction down the creek with its meanders; thence west to the John Nall east line, and north so as to include 20 acres."

The testimony shows that this 20-acre tract was bounded on the west by the Nall survey, on the north by the Crabtree survey, and on the east by the creek referred to. Its south boundary line was to be determined by the distance necessary to go in order to carve out a tract of 20 acres. At the time Cook went into possession the east boundary line of the Nall and the south boundary line of this 20-acre tract were not definitely settled by well-defined lines. In 1903 J. S. Gholston and Cook jointly built a partition fence on what they at least tentatively concluded was the south boundary line of the 20 acres and the east boundary line of the Nall survey. Each party cleared and cultivated land up to that fence. According to Cook's testimony the fence was constructed with the understanding that at some future time the land would be surveyed and the true boundary lines established, and that Gholston would consent to the removal of this fence to that line when located. He also testified that a short time before Gholston's death they talked about their line, and Gholston gave as an excuse for not having the land surveyed that it was necessary to make a trip to Austin and have some corrections made in his field notes. Martin Gholston testified that he was present and assisted in the construction of the fence, and he heard the conversation between his father and Cook. He states positively that the place where the fence was located was definitely agreed on between his father and Cook as the true boundary line between them; that his father during his lifetime, and he and his mother since his father's death, had used, cultivated and claimed the land up to that fence.

[1] The court submitted special issues, in response to which the jury found: (1) That there had been no agreed boundary between

Cook and J. S. Gholston; and (2) that the defendants and those under whom they claim had not held the possession of the land on the east side of the fence adversely. In connection with the submission of the last question the court gave the following special charge at the instance of the appellee:

"If you believe from a preponderance of the evidence that the defendants and those under whom they claim entered upon the land sold by John S. Gholston to the plaintiff at or about the time of the date of Gholston's deed, to wit, in 1902, and have held it ever since under the belief that it was not included in the deed of the said Gholston to the plaintiff, then the possession of the defendants or of the said John S. Gholston is not adverse."

In other words, the jury were told that, if the Gholstons remained in possession of the land under the belief that it had not been conveyed to Cook, the possession would not be adverse. In support of that charge appellees refer to the following cases: Harris et al. v. Hardeman, 27 Tex. 248; Voight et al. v. Mackle, 71 Tex. 78, 8 S. W. 623; Meurin v. Kopplin (Tex. Civ. App.) 100 S. W. 984; Wiess et al. v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793; Bruce v. Washington et al., 80 Tex. 368, 15 S. W. 1104. None of these cases support the proposition of law upon which that charge is based. The first and second hold that a party remaining in possession after having conveyed the land cannot claim under the 5-year statute. The third case is not similar on the facts. The fourth and fifth apparently hold to the contrary of that proposition. It may be true that, where one is claiming and holding land up to a certain line believing it is the true boundary, but with no intention of claiming to that line should it prove to be incorrect, his possession would not be adverse. But, according to some of the evidence, that situation does not exist here. According to Martin Gholston's testimony the Gholstons claimed to the fence with the fixed belief that it was the true boundary, and no conditions qualified that claim. It is undisputed that the land in controversy was within Gholston's inclosure, and the Gholstons had been using and cultivating it for more than 10 years.

The belief that one has a good title to the land which he holds, whatever may be the basis of that belief, does not affect the legal consequences of continuous possession unless it so modifies that intention of the claimant as to make his claim a conditional one—conditioned upon his title proving good. In the case of Bruce v. Washington et al., cited by the appellee, the court told the jury that—

"If they believed defendants entered the land and held it ever since under the belief that it was included in their deed, and with no intention to claim or hold the same adversely to the true owner, if not included in the deed, then their possession was not adverse."

The failure of the court in giving the charge in this case to insert the words, "and with no intention to claim or hold the same adversely to the true owner," or some equivalent qualification, must have misled the jury in passing upon the issue of adverse possession. It is immaterial what the belief one may have regarding the basis of his title, or right of possession, if the claim is exclusive, unconditional, and hostile to the world. If the Gholstons claimed the land to the fence, without reference to any future adjustment of the boundaries, the adverse character of their claim was not affected by the belief that they had a paper title, or had never parted with the land. In Daughtrey v. N. Y. & Tex. Land Co. (Tex. Civ. App.) 61 S. W. 947, the court said:

"It might be that if appellant, though inadvertence or ignorance, had placed his line nearly 3,000 varas beyond the true boundary line, as found by the court, with no intention to claim except to the true boundary line, wherever it might be, that his possession would not be an adverse one. 'But,' as said by the Alabama court, 'the rule is different where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, even though the established line is erroneous, and the claim of title was the result of a mistake.' That the fact that appellant believed and claimed the land to be a part of a certain grant would not of itself strip his possession of its adverse character, is sustained in several Texas decisions."

The same proposition of law is announced in Jayne v. Hanna (Tex. Civ. App.) 51 S. W. 296. We conclude that the court erred in giving the requested charge. It is evident that the finding of the jury against the appellants upon the issue of adverse possession was influenced by that instruction.

Since the case must be reversed it is proper to call attention to some other issues presented in this appeal.

[2] It appears that during the lifetime of J. S. Gholston other parties brought suits against him and secured judgments which involved the location of the east boundary line of the Nall survey at other points. The court permitted those judgments to be introduced at the trial of this case. This, we think, was error. Cook was not a party to that litigation, and the judgments did not fix the boundary of the Nall survey on this particular tract of land. The testimony as to the true location of the Nall east boundary line and the south boundary line of the 20-acre tract is not entirely satisfactory, but it may be strengthened in another trial. A careful examination of the record discloses a state of facts which makes it exceedingly difficult to determine just where those lines should be located on the ground.

For the reasons stated, the judgment will be reversed, and the cause remanded.