CHARLES D. BRUCE v. GEORGE WASHINGTON ET AL.

No. 3094.

**Parol Evidence — Limitation of Ten Years.** — A boundary line of a tract of three hundred acres bought by defendants was in dispute. Defendants claimed an actual survey made by an agent of the vendor, with corners marked with oak posts. They also took possession in 1875 up to the line indicated by the oak posts and held the land adversely ever since. Suit was filed against them September 1, 1888. By survey by course and distance the land in dispute, twenty-two acres, was outside of their purchase. *Held:*

1. The survey upon which defendants bought having been made by the agent of their vendor the parol testimony to its locality was competent.

2. But said testimony was immaterial, as the title of the defendants was perfected under limitation of ten years.

3. This title would not be affected by declarations of the defendants after acquiring it that they did not wish to take any of plaintiff's land by limitation.

4. The issue whether the defendants intended to hold the land if outside their purchase was submitted to the jury, and as it was evident the defendants held the land as inside and not without the limits of their purchase, the verdict for defendants was supported by the testimony notwithstanding declarations that they did not want to recover beyond their line.

ERROR from Brazoria. Tried below before Hon. Wm. H. Burkhart.

This was an action of trespass to try title. The defendants claimed the land as within the lines of their purchase as run and marked at their purchase. The defendants entered into possession to the line as claimed by them in 1875, and have had it in actual possession, claiming it ever since. The suit was filed September 1, 1888. The defendants pleaded not guilty and statute of limitations. The other facts are given in the opinion.

*F. J. Duff,* for plaintiff in error.—1. The defendants seeking to hold a particular tract of land not embraced within the boundaries as set out in their deed, but because it was pointed out to them and they were told that they would get that particular tract, said representations being made by other persons than their grantor, who also is the owner of this particular tract, must show some agency or privity of interest between the parties making the representations and the owner of the land before such proof is admissible to bind the owner of the land.

Latham v. Pledger, 11 Texas, 439; Wright v. Doherty, 50 Texas, 34; Watts v. Howard, 77 Texas, 71; Wooters v. Railway, 54 Texas, 294.

2. In an action of trespass to try title it is not competent to show by parol testimony that the parties to a deed intended to embrace land not in fact included in the description of the land in the deed. Watts v. Howard, 77 Texas, 71; Rev. Stats., art. 2245; Bedwell v. Thompson, 25 Texas Supp., 245.

3. Title by limitation can not be secured by an occupancy of a few acres of land adjoining that owned by the occupant, when such occupant encroached beyond the true division line without design to claim adversely, and when the true location of the line was not certainly known until a survey and after such possession. Mhoon v. Cain, 77 Texas, 317; Craig v. Cartright, 65 Texas, 421; Bracken v. Jones, 63 Texas, 186; Satterwhite v. Rosser, 61 Texas, 172; Word v. Drouthett, 44 Texas, 370; Chance v. Branch, 58 Texas, 492; Blassingame v. Davis, 68 Texas, 596; Church v. Burghardt, 8 Pick., 327.

4. Acquiring title to land by limitation being dependent upon the concurrence of certain facts, the admissions of the party when adverse to himself, relative to those facts, are conclusive of his right, and the court should not submit to the jury as an open question their existence or non-existence. Hunnicutt v. State, 75 Texas, 234; Rev. Stats., art. 1317.

*W. S. Brooks*, for defendant in error.—1. The question of whether or not Price was the agent of Thompson in selling the land to defendants in error is a question of fact for the jury to determine, and as such was properly submitted to the jury by the court, and the jury having determined that such agency existed, and there being ample evidence to sustain such finding, this court will not disturb the verdict.

2. (1) Adverse possession is an actual visible appropriation of land commenced and continued under a claim of right inconsistent with and hostile to the claim of another. The facts under which this claim of right is made and upon which it is based may be found not to exist, still if the party in possession openly asserts a claim of ownership to the particular land itself, claiming that "this is mine" his possession is essentially adverse and "inconsistent with and hostile to" the rights of others.

(2) Where boundary lines are established and possession is taken in accordance therewith and is continued for such a length of time as will give title by disseizin, the line can not be disturbed, although found to be erroneously established, unless there be clear proof that such possession was not adverse. Rev. Stats, art. 3198; Bracken v. Jones, 63 Texas, 186; Craig v. Cartright, 65 Texas, 421; Washb. on Real Prop., 125.

HOBBY, PRESIDING JUDGE—The plaintiff in error error Chas. D. Bruce brought this suit for the recovery of the land in controversy, it being a part of the Wm. Rabb league, against the defendants Geo. Washington, Wat Edwards, and King and Odo Van.

The defendants pleaded not guilty, the statutes of three, five, and ten years limitation, and disclaimed as to all of the two hundred and eighteen acres tract sued for, except so much as was included within their inclosures and of which they have actual possession. ·

At the June Term, 1890, a verdict and judgment were rendered for defendants for twenty-two acres of the land, which judgment is before us for review upon writ of error prosecuted by the plaintiff in error Chas. D. Bruce, who was also plaintiff in the court below.

It was agreed between the parties on the trial below "that Edward Thompson was the owner of five hundred and sixty-eight acres of land in the William Rabb league; that he sold to defendants the three hundred acres described in their deeds by meets and bounds, and fifty acres to one Wells, and the balance of the tract," two hundred and eighteen acres, to the plaintiff Bruce.

It was agreed further "that the only questions to be submitted to the jury are: 1. Are the twenty-two acres involved in this suit included in the boundaries of the three hundred acres tract bought by the defendants in error from Thompson? 2. If not so included, is defendants' plea of limitation good?"

The county surveyor Fred Robbins testified that he had made a survey of the land involved in this suit, and the three hundred acres bought by defendants from Thompson and of the fifty acres tract bought by Wells. The survey was made by order of the court in this cause. He made the survey according to the field notes in the deed from Thompson. "The twenty-two acres involved in this suit as surveyed by me and shown on the plat are not included in the field notes of the three hundred acres sold by Thompson to the defendants." Witness was employed by defendants to survey the three hundred acres tract bought from Thompson. Before starting the survey he asked them what land they claimed. They handed him the Thompson deed and said only the land described in that deed. They claimed none of Bruce's land, but "they claimed that the twenty-two acres were embraced within the boundaries set out in that deed. When I started the survey they would not allow me to start at the point indicated in their deed, but insisted on my starting at a point eighty varas west of said point. As I would not make the survey in that manner they would not let me make the survey. Defendants' improvements are on the twenty-two acres. I found no marked corner where I established the beginning point of defendants' three hundred acres tract, but established the same by running a line from an established corner in the league above and intersecting

this by a line run from Caney Creek. Did not look for the posts called for in defendants' deed."

It appears from the surveyor's testimony and report that defendant in error George Washington occupies, uses, and cultivates about two acres of the two hundred and eighteen acres of plaintiff's land. Odo Van and King Van, the other defendants, are in possession of and have inclosed by fence about twenty acres of the said two hundred and eighteen acres tract. The survey of the defendants' land was made according to the field notes of their deed, "except that in surveying the northeast boundary line it was found that the Royall plantation tract is one thousand and fifteen varas in width instead of one thousand and two varas, as stated in the deed; and the field notes of the three hundred acres tract correspond in width with the field notes of said plantation tract," and he "extended the width of the three hundred acres tract thirteen varas to correspond with the actual width of the Royall plantation tract."

It was proved by the witnesses Culver and Currie that they had heard defendants say that they did not claim any of the plaintiff's land; that they made no claim to any land except that described in their deed from Thompson, and that the land within their inclosure was embraced within the field notes of that deed.

The Edward G. Thompson deed to defendants describes the three hundred acres tract as beginning at the corner of the Royall plantation tract next to Gibson's plantation, being on the lines between the Tone and Jamison league and the W. Rabb league, at a stake or post, running thence along said line northwest one thousand and two varas to a stake or post; thence southeast one thousand and two varas to the Gibson line; thence northeast seventeen hundred and fifty varas to place of beginning. The deed is dated December 15, 1874.

The defendants testified that they purchased the land at the time mentioned in the deed. Before buying they went on it with one Price, who acted as agent for Thompson. The land was surveyed before making the deed, and was run off and liveoak posts set at each corner, and Price and the surveyor Yeomans told defendants "the land between the posts was their land. Price then sent on and got the deed from Thompson and delivered it to us, and we paid him the money ($800), and two notes for $500 each. The next year, 1875, we moved on the land and fenced it as it is now. Have had it fenced and actually in cultivation ever since. All of our houses, gins, etc., are on the land in suit. Our title or possession was not disputed until this suit. Have always claimed this land as ours, and never stated that we did not claim it. Our fences are within the limits of the oak posts set by Yeomans. They are still on the ground. When Robbins came to survey it he asked us what land we claimed, and I gave him our deed and said that land. He refused to start at the right place and we stopped him." Witness

denied telling Robbins or any one that he did not claim that particular land in suit. Have claimed and worked it since December, 1874.

On cross-examination the defendant Washington stated "that he never intended to claim any land but what he bought, and never intended to get any of plaintiff Mr. Bruce's land by limitation. We were told by Price and Yeomans that we were getting the tract between the posts, and this was between them, and we claimed this particular tract."

The first and second assignments are in effect that the court erred in admitting the testimony showing that Yeomans and Price surveyed the land for the defendants before their purchase and pointed out the land in controversy as the tract they were purchasing when neither the grantor Thompson nor any one authorized to represent him was present.

The evidence establishes very clearly that Price was the agent of Thompson, through whom the defendants negotiated the contract for the purchase of the land. The bargain for it was made with Price, who acted as the agent of Thompson in receiving the purchase money paid by defendants and in delivering to them the deed under which they claim. The objections therefore to this evidence on the ground that no one was present to represent Thompson, and on which the above assignments are based, is not well taken.

The remaining assignments raise two questions: 1. The alleged error of the court in admitting parol evidence that other land than that described in the defendants' deed was intended to be conveyed, this not being a proceeding between defendants and Thompson to correct or reform the same. 2. The supposed error in the charge under the facts upon the question of limitation.

Under the agreement between the parties, in the light of the proof made in the case, it will not be necessary to consider each of the questions above indicated, as the issue of limitation is decisive in our opinion of this cause. That being so, it would be unimportant as to the disposition of the other.

It is claimed that the court erred in instructing the jury that if defendants entered upon the land and have held the same peaceably, continuously, and adversely for ten years prior to the institution of this suit, under the belief that the land was included in their deed, they would be entitled to a verdict.

The court had informed the jury of the statutory definition of adverse possession, which was essential to vest title.

By the terms of the agreement this issue of limitation, or whether if the land was not embraced in the field notes of defendants' deed it was held by them by limitation, was an important issue to be submitted to the jury. It is obvious, we think, that the facts in the case which we have referred to required its presentation to the jury. It is abundantly established by the testimony that the defendants entered upon

and took possession of the land, erected their improvements, and have cultivated, used, and enjoyed it for the full period of ten years before this suit was brought. Their possession was certainly an actual and "visible appropriation of the land, commenced and continued under a claim of right wholly inconsistent with Bruce's, and hostile to any claim" he had. And this is what the statute says shall be sufficient to vest a complete title. The legal effect of the existence of these facts can not be destroyed or impaired by the mere declaration of the defendant, after the right attaches by virtue of the law, that he was not claiming plaintiff's land by limitation. The statute has given to the adverse, continuous, hostile possession, shown by the proof in this case, a certain effect. It results in the consummation of a title—a title as full and absolute as any other perfect title. Such title is the owner then deemed to hold, "preclusive of all claims." And it is not to be affected by a subsequent statement to the effect above mentioned.

If the statements or evidence are sufficient to show that such adverse possession was not held, or that the facts in other words did not concur and exist which would create this title under the statute, that would present a different question. But that was manifestly not so in this case, for the court charged the jury, at the plaintiff's own request, that if they believed defendants entered the land and held it ever since under the belief that it was included in their deed, and with no intention to claim or hold the same adversely to the true owner if not included in the deed, then their possession was not adverse and they can not recover, etc. The issue was thus fairly presented to the jury. That defendants did hold and claim it adversely to plaintiff the evidence shows. The jury so found, and we think correctly. Hence if it be admitted that there was error in this case in permitting defendants to introduce parol proof that other land than that described in their deed was intended to be and was conveyed to them by Thompson, it is immaterial and becomes unimportant in view of the fact that upon the issue of limitation the verdict must necessarily have been as it was, for defendants.

We think that justice is attained by the verdict in this case, that the judgment is correct, and that it should be affirmed.

*Affirmed.*

Adopted March 24, 1891.