## J. T. Hand v. A. J. Swann et al.

### No. 22.

**1. Possession, when Adverse.**—In 1871 R. purchased from appellant 1 acre of land out of an 8 acres tract owned by him, out of the southwest corner, 157 by 281 feet in size, and B. purchased of appellant 1 acre in the northwest corner of said 8 acres tract, 157 by 281 feet. In 1875, by virtue of these titles, the then owners had enclosed their respective lots; in one of them there was an area of 176½ by 308 feet, and in the other 169½ by 308 feet. They sold to the vendor of one of the appellees, and the ancestor of the other. These sales were made with reference to the enclosures, but by the same description as in the original deeds. These vendors and the appellees believed that they were buying all the land within the enclosures; they recognized no adverse right, and supposed that they owned all the land enclosed. Suit was brought by appellant in January, 1890, for the unsold strip of land thus appropriated. *Held,* appellees' possession must be deemed adverse, and their titles good by limitation, although after the excess was first discovered, by a survey made in 1888, appellees made a proposition to appellant to purchase it.

**2. Possession, when not Adverse.**—The case differs from those where one extends his fence upon the land of an adjoining owner, intending only to assert title to the true line when ascertained. In such cases the possession recognizes the title of his neighbor to the land defined by the true boundary, when it is ascertained, and hence his enclosure of a part of the land that does not belong to him is not hostile.

**3. Same.**—If the claim of ownership is not up to the partition fence, but only to the true line, there would be no adverse holding except to the true dividing line. But where the fence is believed to be the true line, and claim of ownership is up to it as located on the ground, even though the line as established by the fence is erroneous, the possession does not originate in admitted possibility of mistake, and the possession is adverse.

4. **Negotiations for Purchase.**—Title had vested in appellees before the negotiations concerning a purchase, which were engaged in for the purpose of compromising differences and clearing title, and under well recognized principles of law should not be allowed to prejudice the claim of either party.

APPEAL from Smith.   Tried below before Hon. FELIX J. McCORD.

*C. G. White*, for appellant.— 1.  The principal question in this case is a question of boundaries; and there being no law of limitations as to boundaries, the courts presume only after a long lapse of time, where both parties have their property enclosed, that they have acquiesced in a boundary fence between them.    Rev. Stats., arts. 3194, 3198;  Floyd v. Rice, 28 Texas, 341;  Tucker v. Smith, 68 Texas, 473;  Blassingame v. Davis, 68 Texas, 595; Word v. Drouthett, 44 Texas, 370;  Bracken v. Jones, 63 Texas, 184.

2.  The court erred in holding that limitations commenced to run in favor of defendants from the time they enclosed the strips of land claimed by each of them respectively, because the evidence shows they enclosed and held the same by mistake and in ignorance of the true boundaries, both on the part of the plaintiff and defendants.   Rowe v. Horton, 65 Texas, 89;  Emerson v. Navarro, 31 Texas, 334;  Jacobs v. Mosely, 91 Mo., 457, and cases cited;  Huckshorn v. Hartwig, 81 Mo., 648;  Winn v. Abiles, 35 Kans., 85; Marratt v. Starr, 72 Iowa, 677; Howard v. Reedy, 29 Ga., 152;  Alexander v. Wheeler, 69 Ala., 332;  1 Am. Encyc. Law, 248, 249;  Bracken v. Jones, 63 Texas, 184;  Sailor v. Hertzog, 2 Pa. St., 185.

*T. N. Jones* and *Finlay, Marsh & Butler*, for appellees.—The land having been enclosed at the time appellees bought their lots, and they having bought with reference to its enclosure, and having claimed the same to the fences, and peaceably occupied, used, and cultivated it for more than ten years, their possession was adverse, though they did not know that the land embraced within their enclosures exceeded the amount called for or described in their deeds.   Bracken v. Jones, 63 Texas, 184, and authorities cited; 1 Am. and Eng. Encyc. of Law, 248, note 1.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant owned 8 acres of land in the southern part of the city of Tyler, 377½ feet in length north and south, and on May 5, 1871, he conveyed to John H. Rowland 1 acre in the southwest corner of said 8 acres, 281 feet east and west by 157 feet north and south, of which appellee Swann is now the owner by mesne conveyance from Rowland, having bought from Yarbrough and Wimberley, March 3, 1873.

On May 5, 1871, appellant conveyed to W. D. Burress 1 acre in the northwest corner of the 8 acres, 281 feet east and west by 157 feet north

and south, of which the appellees R. J. House and Edwina Duncan are now the owners by inheritance from their mother, Louisa L. House, who purchased from Burress on October 28, 1875. The width of the strip of land left by these deeds, between House on the north and Swann on the south, is $63\frac{1}{2}$ feet, which has never been conveyed by appellant to any one; east of and adjoining the two lots of 1 acre each, conveyed by appellant to Rowland and Burress respectively, there is a strip of land 59 feet east and west and extending $377\frac{1}{2}$ feet north and south through the block, which has never been sold by appellant to any one. Appellee Swann has enclosed an area 308 feet east and west by $176\frac{1}{2}$ feet north and south, which includes the 1 acre to which he has title, and extends $19\frac{1}{2}$ feet north on the $63\frac{1}{2}$ feet strip and extends 27 feet east on the 59 feet strip.

Appellees House and Duncan have possession of an area 308 feet east and west by $169\frac{1}{2}$ feet north and south, extending south 12 feet on the $63\frac{1}{2}$ feet strip and east 27 feet on the 59 feet strip, which is enclosed by fence.

This suit is an action of trespass to try title, brought by appellant January 23, 1890, to recover the strip of land thus held by appellees. The latter pleaded title by limitation of ten years, and on the trial the court decided in their favor on that plea. Appellant has brought the case here on appeal; and the sole question presented is whether or not such holding of the court below was correct.

It is conceded that appellees' possession had lasted for a sufficient length of time to bar appellant's title, if possessing the other requisites; and the question for our determination is whether or not such possession was adverse.

The evidence introduced by appellees was, that the land was enclosed, as shown above, at the date of the deeds from Yarbrough and Wimberley to Swann and from Burress to Mrs. House, respectively; that they bought with reference to the enclosures, supposing their deeds passed title to the area within the fences; and that they had held open, notorious, and visible possession ever since, claiming to the fences as their boundaries, and recognizing no other claim to the land embraced therein. In view of the findings of the court below, we must conclude that these are the true facts, notwithstanding some conflict in the evidence as to the time when the fences were placed as they now stand. Appellant never had any of the 8 acres enclosed.

The mesne conveyances under which appellees claim embrace only the land described in the deeds from appellant to Rowland and Burress.

In 1888 a survey of the premises was made, disclosing the fact that appellees had land enclosed which was not embraced in their deeds as above explained. Until that survey was made appellees did not know what area was enclosed within their fences, though Swann had paid taxes on an acre

and a quarter. The following letter from Swann to appellant, of date December 27, 1888, was offered in evidence.

"I find you are right about the strip of land in rear of myself and House, a part of which we have enclosed and paid taxes on for over fifteen years, thinking survey was all right until this survey. I have conferred with Reuben House, and am authorized to make this offer to quiet and clear titles of all cloud on his part and mine: We will pay you $100 net cash for the two strips of land which lie in the form of a T; we will have deed written at our costs by Dr. Wells, and will forward you for signing. Let me hear from you."

Negotiations followed concerning the purchase by appellees of the land still owned by appellant, adjoining the lands of the former, but no agreement was arrived at.

Swann acted as appellant's agent to render and pay taxes upon land other than that embraced in the enclosures from 1876 until 1883. He was not appellant's agent with reference to the land in controversy, and did not recognize his title to it. In the summer of 1889, while the parties were negotiating for a settlement, appellant asked appellees if they intended to try to take his property from him by limitation, and Swann replied that he could not afford to plead the statute against appellant. House made no reply. The letter was written, and these conversations took place, in the effort to settle their differences, and in connection with the offer by appellees to purchase the land they had enclosed and that adjoining it.

We think this evidence is sufficient to show that appellees' possession was adverse. The case differs from those where one extends his fence upon the land of an adjoining owner, intending only to assert a claim to the true line when ascertained. In such cases the possessor recognizes the title of his neighbor to the land defined by the true boundary, when that is ascertained, and hence his enclosure of a part of the land that does not belong to him is not hostile. Huckshorn v. Hartwig, 81 Mo., 648; Winn v. Abiles, 35 Kan., 85.

Here appellees bought with reference to the enclosures, and all the time claimed all the land embraced by them, and recognized no other right. The fact that they supposed they owned all the land enclosed does not render their claim any the less hostile, but rather strengthens it. The authorities cited all recognize the distinction. Alexander v. Wheeler, 69 Ala., 340. In the case last cited the rule is thus stated: "If a partition fence be extended by one of two adjacent owners, so as to embrace within his enclosure a portion of his neighbor's land, through mere inadvertence or ignorance of the location of the real line, or for the purpose of convenience, and with no intention to claim such extended area, but intending to claim adversely only to the real or true boundary line, wherever it may be, such possession would not be adverse or hostile to the true owner.

There can be no adverse possession without a coincident intention to claim title.  If the claim, in other words, is not up to the partition fence as extended, but only to the true line, there would be no adverse holding of the new enclosure, but only up to the true dividing line.  But the rule is different where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, even though the established division line is erroneous and the claim of title was the result of the mistake.  In such case there is a clear intention to claim to the fence as the true line, and the possession does not originate in admitted possibility of mistake."   The Texas cases cited by appellant do not conflict with this.  Tucker v. Smith, 68 Texas, 481; Bracken v. Jones, 63 Texas, 184; Blassingame v. Davis, 68 Texas, 598.

The title had vested in appellees before their negotiation concerning a purchase.   These were engaged in for the purpose of compromising differences and clearing the title, and under well recognized principles of law should not be allowed to prejudice the claim of either party.

The judgment was right, and it is affirmed.

*Affirmed.*

Delivered November 17, 1892.