## CARLISLE v. ELKS HOME ASS'N.
### (No. 989.)

(Court of Civil Appeals of Texas. Beaumont. June 26, 1923. Rehearing Denied June 27, 1923.)

**1. Appeal and error ⊜⇒927(7)—Evidence construed most favorable to appellant in reviewing directed verdict.**

The evidence will be viewed in its light most favorable to appellant in reviewing an instructed verdict.

**2. Adverse possession ⊜⇒115(5) — Evidence held to make title by limitation question for jury.**

In trespass to try title, where the record title was in defendant, and the plaintiff's pleading raised the issue of title by limitation, evidence that plaintiff's grantor for more than 10 years occupied the land in dispute, claiming it and exercising dominion over it, made for the jury a question of title by limitation, notwithstanding such grantor's testimony that it was not his purpose to acquire any of his brother's land by limitation; the record title to the land in dispute having, during the limitation period, been in such brother.

**3. Estoppel ⊜⇒93(5)—Where defendant's entry wrongful and by force, plaintiff not estopped.**

Where there was no suggestion of a transfer of title to land in writing and the testimony of plaintiff in trespass to try title negatived any parol promise, sale, or gift, evidence that defendants purchased for her a similar strip of land adjoining her premises and that she took possession of it and built a garage thereon was not sufficient to estop her from claiming possession of land on which the defendants had constructed valuable improvements, where defendants forcibly entered on the land, such improvements not having been made in good faith.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Trespass to try title by Mrs. Natalie T. Carlisle against the Elks Home Association. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

J. S. Simkins, of Corsicana, for appellant. R. E. Prince, of Corsicana, for appellee.

WALKER, J. This was a suit in trespass to try title by appellant against appellee, to recover the title and possession of a strip 8 feet wide by 70 long in the city of Corsicana, Na-

varro county, Tex. She also pleaded the several statutes of limitation.

Appellee answered by the usual pleas, including estoppel. This appeal is from an instructed verdict in favor of appellee.

[1] Viewing the evidence in its most favorable light to appellant, which is our duty, as against an instructed verdict, the following is a brief statement of the case. In 1901 or 1902, Col. Polk owned 190 feet of frontage on West Sixth avenue, with a 70-foot frontage on South Twelfth street in the city of Corsicana. About the year 1901 or 1902, he sold 60 feet of frontage on West Sixth avenue to his son, E. M. Polk, who immediately entered into possession of the lot bought by him, and remained continuously in possession until he sold the lot to appellant, about the year 1911. During the time he was in possession he claimed all the land included in his fences, and, upon the sale to appellant, she went into possession, claiming all the land under fence until appellees forcibly ejected her from the possession of the land in controversy in the year 1914.

At that time the land in controversy had been under fence and claimed by E. M. Polk and appellant for about 14 years. After deeding the 60-foot frontage on Sixth avenue to E. M. Polk, Capt. W. A. Polk deeded the remaining 90-foot frontage on Sixth avenue, with a 70-foot frontage on Twelfth street, to his son, Arthur. By mesne conveyances, Arthur Polk's title passed to appellee. In his deed to Mrs. Carlisle, Polk described the land as follows:

"Beginning at the northwest corner of lot No. 3 on the south line of West Sixth avenue, Corsicana, Texas; thence S. 30° E. with the west line of said Lot No. 3, 120 feet to the north side of alley; thence N. 60° E. 10 feet to stake on north side of alley; thence N. 30° W. or parallel with the west line of lot No. 3, 50 feet more or less to stake for corner; thence N. 60° E. 50 feet more or less to stake for corner; thence N. 30° W. 70 feet more or less to the south line of West Sixth avenue; thence S. 60 W. with the south line of West Sixth avenue 60 feet, more or less, to the beginning. The intention here being to convey all the property I am now in possession of, located in block No. 312, as shown by the official map of Corsicana, Texas."

We quote as follows from the testimony of E. M. Polk:

"I don't remember exactly the date I acquired this property from my father, Capt. W. A. Polk, but it must have been about 1902 or 1903—the records will show—possibly it was in 1901. I was in possession of that property from the time I bought it from my father in 1901 until I sold it to Mrs. Carlisle. From the time I bought that property up until the time I sold it to Mrs. Carlisle, I did not know the exact frontage there was on Sixth avenue. I did not have it surveyed, but I just assumed it was what my father deeded to me, and when I deeded the property to Mrs. Carlisle, it was my intention to convey to her the same property I had gotten from my father. I don't remember any discussion between Mrs. Carlisle, Mr. Bogy, and myself about the fences or general situation of the property immediately preceding the sale of the property to Mrs. Carlisle. There might have been, but I don't remember it, and will not say whether there was or not.

"Q. Assuming that there was a fence between the property you got and Arthur's property, that was the division between your property and the property on the corner? A. Yes, I understood it that way.

"Q. And with that understanding you conveyed to Mrs. Carlisle? A. Yes."

Cross-examination:

"Q. Did you intend to convey to Mrs. Carlisle anything that was not included in the deed to you from your father? A. Well, I intended to deed to Mrs. Carlisle just what I honestly had and I did not have it surveyed. . * · * * I intended to deed to Mrs. Carlisle just what I honestly owned, that was my intention, and I did not ever think I owned, any part of the property my father deeded to my brother. I did not claim or at any time ever set up a claim to any part of the lot that my brother had gotten from my father, and it was not my intention to deed to Mrs. Carlisle any part of that lot my father had gotten from my brother."

In 1914, at a time when appellant was in Houston, appellee made preparations to build upon the property it owned, and when making excavations for its building discovered that it had a frontage of only 85 feet on Sixth avenue. It then sent one Cal Kerr to Houston to negotiate with appellant and secure from her permission to take possession of the 5-foot frontage on Sixth avenue, which was necessary for its building. Cal Kerr returned from Houston and reported to appellee that appellant had consented to exchange the 5-foot frontage claimed by appellee for a 5-foot frontage on the other side of her lot, provided appellee would buy the other 5 feet and remove her house and her fence. At once, upon receipt of this report from Cal Kerr, appellee tore down appellant's fence, moved her house, and proceeded with the erection of its building. Afterwards, it did secure a title to a 5-foot frontage on the other side of appellant's lot, and had the deed recorded, but did not deliver it to appellant, nor advise her of the fact that it had been secured. Appellant denied every fact testified to by Cal Kerr. She said that Cal Kerr made such a proposition to her, but that she did not accept it; that she knew nothing of appellee's entry upon her property until her fence had been torn down and her house moved; that as soon as she heard of it she protested, employed counsel, and has continued her protest continuously. She said she knew nothing of the deed that had been taken in her name until 1916, at which time appellee's building was finished. Appellant has

never consented to nor acquiesced in appellee's possession of her property, but has at all times insisted that its acts were wrongful, and has prosecuted her cause of action. A short while before this case was tried, she took possession of the 5-foot frontage which had been secured in her name by appellee, built her garage upon it, and at the trial of the case was in possession and enjoyment thereof.

## Opinion.

The court's charge to the jury was as follows:

"You are instructed that the plaintiff, Natalie T. Carlisle, has failed to prove title to the 5x70 feet of land in controversy, and you will return a verdict for the defendant, Elks Home Association. The form of your verdict you will find below, which must be signed by your foreman."

[2] As we understand the evidence, the trial court misconstrued its effect. We believe it appears, and for the purposes of this opinion we concede, that appellee owned the record title to the 5 feet in controversy, but appellant had raised an issue of title by limitation. The claim and possession of E. M. Polk of the land in controversy for more than 10 years raised an issue in his favor, though it was not his purpose to acquire any of his brother's land by limitation. In fact, he did have 5 feet of his brother's land in actual possession, claiming it and exercising dominion over it. On the testimony of E. M. Polk, the issue of limitation should have gone to the jury. Tucker v. Angelina County Lbr. Co. (Tex. Com. App.) 216 S. W. 150; Bruce v. Washington, 80 Tex. 368; 15 S. W. 1104; Daughtrey v. Land Co. (Tex. Civ. App.) 61 S. W. 947; Hand v. Swann, 1 Tex. Civ. App. 241, 21 S. W. 282.

[3] We do not think the facts of this case even raise the issue of estoppel; certainly they do not sustain it as a matter of law. As we understand the decisions of the courts of this state, title to real estate cannot pass except by an instrument in writing unless it comes within the well-recognized rule that one relying upon a parol gift or sale may acquire title by estoppel if, relying on the parol sale or gift, he enters into possession and makes valuable improvements. Love v. Barber, 17 Tex. 318; Wooldridge v. Hancock, 70 Tex. 21, 6 S. W. 818; Sanford v. Weller (Tex. Civ. App.) 189 S. W. 1015.

In this case there is no suggestion of a transfer in writing from appellant to appellee. Her testimony negatives a parol gift or a parol sale or a parol promise to make a sale or transfer or gift. Under her testimony, appellees were naked trespassers in taking possession of the land in controversy and in removing her house and fence, which trespass has continued without interruption from the original entry to the trial of this

case. Her subsequent act in taking possession of the 5-foot frontage purchased for her by appellee was no more than the acceptance by her of payment for her land. Even if it be given this effect, then the other elements of estoppel, as defined by the above-cited cases, are wholly lacking, as it appears from appellant's theory of the case that appellee's possession was wrongful, and continued so, in that their improvements were not made in good faith, but were in derogation of appellant's rights and against her active, continuous protest.

Reversed and remanded.