## O'CONNOR v. PRESSWOOD.

### No. 2598.

Court of Civil Appeals of Texas. Beaumont.

Nov. 1, 1934.

Pitts & Liles, of Conroe, for appellant.

Crawford & Crawford, of Conroe, and Vinson, Elkins, Sweeton & Weems, of Houston, for appellee.

WALKER, Chief Justice.

Mrs. Maggie O'Connor, plaintiff below, filed this suit as an action of trespass to try title against Mrs. Mary A. Presswood, defendant below, for 110 acres of land, a part of the Charles Stephens one-third league and one-half labor, survey No. 2, in Montgomery county. By her answer Mrs. Presswood claimed the land under the ten-year statute of limitation (Vernon's Ann. Civ. St. art. 5510). On trial to the court without a jury on the 22d day of September, 1933, judgment was entered against Mrs. O'Connor "that she failed to make out a case against the defend-

ant Mrs. Mary A. Presswood" and in favor of Mrs. Mary A. Presswood on her plea of ten years' limitation that she "should recover the land sued for in this case." The facts are as follows: Appellee was married to Thomas Presswood in 1878. He died May 17, 1930, before this suit was filed. In April, 1882, appellee and her husband moved upon 160 acres of the Charles Stephens survey No. 2, after having purchased the claim of Jesse Carter and his improvements to the specific 160 acres claimed by appellee. She and her husband occupied, claimed, used, and enjoyed this 160 acres of land under the Carter deed from the date of their entry in 1882 until this suit was filed. At the time the Presswoods purchased the land from Carter there was located on the 160 acres a log house and about 14 acres of the tract of land was in cultivation. The Presswoods resided upon this land continuously from 1882 until 1908, when they moved to the little town of New Caney to send their children to school. At that time about 100 acres of the land were in cultivation. After moving to New Caney, the land was held and occupied for the Presswoods by tenants, and cultivated each and every year, except for the year 1907 or 1908. In 1891, the Presswoods purchased 100 acres on the same survey, lying immediately east of and adjoining the 110 acres in controversy. The 110 acres sued for was a part of the 160 acres purchased by the Presswoods from Carter in 1882. Without detailing the testimony further, it is sufficient to say that appellees satisfactorily established every essential element in order to perfect title under the statute of ten years' limitation to the Carter 160 acres.

■ Against the court's judgment appellant advances the proposition that appellee and her husband "always recognized Mrs. O'Connor's title to the land in controversy, which recognition prevented the said statute of ten years limitation from ever beginning to run in her favor." In support of this proposition we take the following statement from appellant's brief, questions and answers reduced to narrative, questions addressed to appellee, Mrs. Presswood: "I knew Mr. P. A. O'Conner during his lifetime; he come to my home there and my husband went with him to look at his piece of land whenever he come until, I don't know why he taken it from my husband and got Mr. Kidd to see to it, Mr. Julius Kidd. I first become acquainted with Mr. O'Conner in '95. The circumstance of my becoming acquainted with him was he bought this land and come there to get it located, wanted my husband to show him where it was

at. My husband did that. My husband continued to look after this tract of land for Mr. O'Conner up until a year or two before Mr. O'Conner died. The tract of land that he bought lay immediately to the west of the tract of land we had. He came down the first time in 1895, Mr. O'Conner, and inquired at the house and Mr. Presswood went with him and they went over the land. I couldn't tell you how often he come there after that to see us, he was a business man; he just come there once a year, something like that, I couldn't tell you how many visits he made, I don't know. I never told Mr. O'Conner that I was claiming his hundred and sixty acres of land down there and he never said he was claiming my piece, either; I knew where he said he bought his piece and had papers for it; I ain't claiming that piece. I am not claiming the piece that he bought. I am claiming what I have had in peaceable possession ever since '82. With reference to the tract I bought from Mrs. Stephens and Mr. Stephens, I am not claiming the piece that Mr. O'Conner bought that lay immediately to the west of my tract; me nor my husband ever claimed that. In fact, I have always recognized Mr. O'Conner's title to that tract of land, that is, what he claimed, the old man himself; Old man O'Conner, P. A. O'Conner. I always recognized Mr. O'Conner's title to that tract of land that lay just west of us; Mr. Presswood did too. If Mr. O'Conner ever paid Mr. Presswood a cent for watching out for that tract in his life I don't know it. He watched out for it, he noticed and saw that people didn't cut O'Conner's timber, but if he was ever paid a cent for watching that land or seeing for it I don't know it. But I do know that I always recognized Mr. O'Conner's title to that hundred and ten acres immediately adjoining our tract on the west, and that I never claimed that tract; I never claimed their piece of land." In support of her proposition, appellant cites Houston Oil Co. of Texas v. Pullen (Tex. Com. App.) 272 S. W. 439. This case does not support appellant's point under the facts of this case. Appellee and her husband went into possession of the land in controversy, that is, of the 160 acres bought from Carter, in 1882. The O'Connor title was not asserted until 1895, and, even under appellant's theory of the case, the Presswoods did not recognize the O'Connor title until 1895. From 1882 until 1895 the Presswoods were in possession, claiming, using, and enjoying the entire 160 acres each and every year under circumstances maturing in them a title by ten years' limitation. There is no suggestion that during that time

the Presswoods ever recognized the O'Connor title or attorned to any one for any part of the 160 acres. It follows that title under the ten-year statute had fully matured before 1895, and by recognizing the O'Connor title, if in fact they did, they did not divest themselves of title. Whittaker v. Thayer, 58 Tex. Civ. App. 282, 123 S. W. 1137; Burroughs v. Smith (Tex. Civ. App.) 8 S.W.(2d) 301; 2 Tex. Jur., pp. 139 to 142.

■ It is not questioned that Mrs. Presswood gave the testimony above quoted. But in giving this testimony it was her contention that in recognizing the O'Connor title the Presswoods had no reference to any part of the Carter 160 acres. She testified as follows, questions and answers reduced to narrative:

"I told you a while ago that I always recognized Mr. O'Connor's title. When old man O'Connor was alive he claimed a line back of where they claim it now. * * *

"The hundred and sixty acres that me and my husband bought from Jesse Carter was on both sides of the New Caney road. We had our west line marked out of that hundred and sixty acres and it is still marked. Old man O'Connor never did make any claim to me and my husband to any of that hundred and sixty acres. My husband never did agree to take care of the hundred and sixty acres that we bought from Jesse Carter for him. The old man claimed his land west of our hundred and sixty acres. * * *

"That hundred and sixty acres that we bought, me and my husband bought from Jesse Carter back in 1882, we have claimed that hundred and sixty acres against the whole world; it was always mine; I want it to be clear on that, I thought it was mine. * * *

"This hundred and ten acres which is being sued for in this case, if it is a part of the hundred and sixty acres that we bought from Jesse Carter, I never told Mr. O'Connor that that was his land."

It appears from this testimony that the Presswoods recognized the title of the O'Connors under a mutual mistake that the O'Connor land did not conflict with the Carter 160 acres. Under this statement, even if appellee had to rely upon the possession subsequent to 1895, she was not precluded from claiming the 160 acres under the ten-year statute of limitation. Alexander v. Schleicher County (Tex. Civ. App.) 291 S. W. 263; Gholston v. Cook (Tex. Civ. App.) 254 S. W. 255; Carlisle v. Elks Home Ass'n (Tex. Civ. App.) 253 S. W. 546; Shaw v. Moody (Tex. Civ. App.) 274 S. W. 1021; Krause et al. v. Hardin (Tex. Civ. App.) 222 S. W. 310; Arnold v. Evans (Tex. Civ. App.) 140 S. W. 497; Jayne v. Hanna (Tex. Civ. App.) 51 S. W. 296; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Hand v. Swann, 1 Tex. Civ. App. 241, 21 S. W. 282; McCabe v. Moore (Tex. Civ. App.) 38 S.W.(2d) 641.

■■ By her answer of ten years' limitation appellee claimed the specific tract of land sued for by appellant. We overrule the contention that appellee's proof failed to show that she claimed "a specific tract of land." Appellee claimed generally the Carter 160 acres. The proof satisfactorily supported the conclusion that the 110 acres sued for was a part of the 160 acres. Appellant controverted this conclusion, but an examination of the testimony offered by the parties convinces us that the issue was at least raised as one of fact for the trial court. On this conclusion there was no variance between appellee's plea and her proof.

■■ We overrule the contention that the court erred in receiving in evidence the inventory and appraisement of the estate of Thomas Presswood dated the 23d day of July, 1930. This case was tried to the court, and, if the testimony was erroneously received, there is nothing in the record to indicate that the court gave it improper consideration in reaching his judgment. However, the inventory was admissible in evidence in support of the issue of limitation. Webb v. Lyerla, 43 Tex. Civ. App. 124, 94 S. W. 1095; Northcut v. Allen (Tex. Civ. App.) 148 S. W. 607.

■■ Appellant was not injured by the introduction of the deed to Thomas Presswood to the 100 acres of land in the Stephens survey. This 100 acres was referred to by appellant in her petition as lying immediately east of the 110 acres sued for. The deed was offered by appellee for the limited purpose of locating the east boundary line of her 160 acres, and to show that it was a common line with the east boundary line of the land sued for. Besides, the case was tried to the court, and there is nothing in the record to support an inference that he gave it improper consideration.

The judgment appealed from is in all things affirmed.