**Leo BOUNDS et ux. et al., Appellants,**

**v.**

**D. H. TAYLOR et ux., Appellees.**

**No. 7793.**

Court of Civil Appeals of Texas.

Texarkana.

March 28, 1967.

Rehearing Denied May 2, 1967.

John D. Raffaelli, Raffaelli, Keeney & Pesek, Bun L. Hutchinson, Atchley, Russell, Hutchinson & Waldrop, Harry Friedman, Harkness & Friedman, Texarkana, for appellants.

Wm. V. Brown, Jr., Brown & Brown, Texarkana, for appellees.

FANNING, Justice.

This suit involves title to a long, narrow strip of land, 17.9 feet wide on the East side on North State Line in the City of Texarkana, Bowie County, Texas, extending West 583.34 feet, then extending South 19.4 feet, and then extending N. 89 deg. 51 East 583.34 feet to State Line and then going North 17.9 feet along State Line. The strip contains about 0.25 acres, more or less, and a portion of it is subject to certain road right of way purposes for U.S. Highway 71.

Cargile Motor Company, a partnership, as plaintiff, sued D. H. Taylor and wife, Fannie Taylor, in trespass to try title for the strip of land in question, and in the alternative sued Leo Bounds and wife, their vendors to the tract in dispute on their warranty, seeking a monetary judgment against Bounds and wife in the event their title to the strip sued for failed. (Bounds and wife by Warranty Deed dated March 25, 1965, had conveyed to Cargile a 5.622 acre tract, more or less, and excepting a road right of way of .290 acres, a part of U.S. Highway 71. This deed was for $75,000.00 consideration and included the long, narrow strip of land in controversy here).

Taylor and wife answered the suit by a plea of not guilty and plead the 10, 5 and 3 year statutes of limitations. Bounds and wife filed pleadings, admitting the sale of the strip and other property to Cargile Motor Company, denied the pleadings of the Taylors, and pleaded in effect that Bounds and wife conveyed good title to the strip to Cargile.

Trial was to the court without the aid of a jury. The trial court, after hearing the evidence adduced, rendered judgment in favor of defendants Taylor and wife for the title and possession of the strip of land in dispute. The trial court further rendered judgment in favor of Cargile against defendants Bounds and wife for the sum of $3,334.50 for the value of the strip conveyed by Bounds and wife to Cargile to which the trial court held that title had failed. Cargile and Bounds and wife have appealed.

The trial court filed Findings of Fact as follows:

## "FINDINGS OF FACT

"1. I find that the plaintiff, Cargile Motor Company, and Leo Bounds had record title from the State of Texas to Cargile Motor Company, to the property which I designate as Tract One, which is

described in paragraph 2, of the Plaintiff's Original Petition.

"2. I find that the defendant, D. H. Taylor, had record title from the State of Texas to himself to the property, which I designate as Tract Two, which is described in Item Ten (10) of the defendants, Taylors' Abstract of Title.

"3. I find that T. J. Hobgood was the common source of title to Tracts One and Two, and that the Deed to plaintiff, Cargile Motor Company's predecessors in title from T. J. Hobgood was given before the Deed to defendants, D. H. Taylor's predecessor in Title.

"4. I find that the tract of land described in Paragraph 3, of the Plaintiff's Original Petition, and as described in Paragraph 3 of the defendants, Taylors' Answer, which is the strip of land herein in controversy, which is herein designated as Tract 'A', was embraced in the description of the property, Tract No. One (1), from its inception, and was also embraced in the description of Tract No. Two (2) from its inception.

"5. I find that the Common Source, T. J. Hobgood, from his various conveyances to the various grantees, conveyed 31.2 acres out of an original 30-acre tract, which he acquired November 24, 1887, by Deed from L. C. DeMorse to T. J. Hobgood, which Deed was recorded in Volume Y, Page 325, of the Deed Records of Bowie County, Texas, and which description is restated in the Deed from A. C. Hobgood to T. J. Hobgood, dated February 4, 1889, and recorded in Volume 2, page 295, of the Deed Records of Bowie County, Texas.

"6. I find that the defendant, Leo Bounds, the predecessor in title to Tract One, had a fence on the North side, or North of the North Side of Tract 'A', which was embraced in the description of his Tract One, and that such fence was there for many years prior to February 1, 1955, and that Leo Bounds and wife, owned Tract One, which included Tract 'A', on February 1, 1955.

"7. I find that D. H. Taylor and wife, Fannie Taylor, defendants herein, perfected complete record title in themselves to all of Tract Two, which included Tract 'A', on November 29, 1954, when the Warranty Deed from Ellie Taylor Word, a widow, conveyed said property Tract Two, to Don H. Taylor and wife, Fannie Taylor, which Deed was recorded December 2, 1954, in Volume 318, Page 323, of the Deed Records of Bowie County, Texas.

"8. I find that immediately after D. H. Taylor acquired complete record title, he engaged McIver & Dupuy, Inc., Surveyors, to survey the property embraced in their Deeds, designated Tract Two which included Tract 'A', and that such survey was made, corners set, and the survey delivered February 1, 1955 to February 15, 1955.

"9. I find that D. H. Taylor moved the fence from the North side of Tract 'A', (or some further from the North side of Tract "A") to the South Boundary Line of Tract 'A' around the first day of February, 1955 to the 15th day of February, 1955.

"10. I find that D. H. Taylor and wife, Fannie Taylor, lived on the premises designated Tract Two, which included Tract 'A', from February 15, 1955, continuously, open and notoriously, using and enjoying the same as their homestead until on or about September 1, 1965, when they were served with citation in this case.

"11. I find that Leo Bounds talked to D. H. Taylor in the year 1959, regarding the purchase of D. H. Taylor's property, and that Leo Bounds mentioned that the fence was further South than he remembered, but that he did nothing about it, and made no demand that the fence be moved.

"12. I find that D. H. Taylor had a cow on his property and that the fence on the South side of Tract 'A' turned the cow and did not break.

"13. I find that the fence erected by D. H. Taylor used one tree growing, the picture of which was introduced, and that the tree grew over and around the three strands of barbed wire attached to the tree, and that the fence had been attached to the tree for at least ten (10) years, prior to March 15, 1965.

"14. I find that D. H. Taylor and wife, Fannie Taylor, used and enjoyed the property designated as Tract Two and which included Tract 'A', and appropriated it to the use and purpose of their yard, which was the proper use and purpose for which the said Tract 'A' was adapted from February 15, 1955, to September 1, 1965, and that D. H. Taylor cut and mowed the grass and weeds of Tract 'A' in the same fashion and manner as he mowed the other acreage not immediately adjacent to his house.

"15. I find that D. H. Taylor maintained the fence along the South boundary line of the property designated as Tract 'A', from February 15, 1955 to September 1, 1965.

"16. I find that D. H. Taylor and wife, Fannie Taylor, claimed the property designated as Tract 'A', as a part of the property designated as Tract Two, under the color of their deeds, paying taxes each year as they accrued, with uninterrupted possession from February 15, 1955 to September 1, 1965, living and residing upon the same as their homestead.

"17. I find that D. H. Taylor and wife, Fannie Taylor, believed that the strip of land designated as Tract 'A' was included in their deed as recorded in Volume 13, page 155, Deed Records of Bowie County, Texas (to which D. H. Taylor was an heir to part of said property); Deed as recorded in Volume 306, page 7, Deed Records of Bowie County, Texas, (which purchased out a sister); and deed as recorded in Volume 318, page 323 of the Deed Records of Bowie County, Texas, (which was the deed from another sister, Ellie Taylor Word, dated November 29, 1954).

"18. I find that the said D. H. Taylor and wife, Fannie Taylor, had no adverse claim presented to them from February 15, 1955, to September 1, 1965, when the present suit was filed against them by Cargile Motor Company, and that they used, claimed, enjoyed and resided on said property designated as Tract Two, which included the property herein in dispute, designated as Tract 'A', and that D. H. Taylor and wife, Fannie Taylor, did not do any acts to indicate they were not claiming Tract 'A' as their own."

The trial court in his conclusions of law concluded to the effect that Taylor and wife had record title to Tract 2, which included Tract "A", the strip in dispute; that Cargile and Bounds and wife had record title in Tract 1, which included Tract "A", the strip in dispute; that Taylor and wife perfected title by adverse possession to Tract "A", the strip in dispute, against Bounds and wife under the 10 year and under the 3 year statute of limitations; that title given by Bounds and wife to Cargile failed as to Tract "A", the strip in dispute, and that Cargile was entitled to recover $3,334.50 as damages against Bounds and wife.

Cargile's brief is short. It adopts the brief of appellants Bounds and wife, and prays that the judgment of the trial court be reversed and that judgment be entered finding that the title to the strip in controversy be vested in Cargile and alternatively that should the judgment of the trial court be affirmed with respect to the title to the tract in controversy being in appellees Taylor and wife, then that portion of the trial court judgment in favor of Cargile against Bounds and wife be affirmed.

Appellants by their points 1, 2, and 3 contend to the effect that the trial court

erred in finding that the disputed tract was embraced within the description of the tract owned by appellees Taylor and wife, and in finding and concluding that Taylor and wife had record title to the disputed strip or tract.

T. J. Hobgood was the common source of title of all parties involved herein. In 1887 Hobgood became the owner of the south 30 acres of a tract originally consisting of 70 acres, in the Willis Oldham Survey in Bowie County, Texas. Thereafter Hobgood sold the 30 acres by four separate conveyances as follows: (1) On March 21, 1889, Hobgood conveyed to Peter Ivey a 7⁹⁄₁₀ acre tract running North and South 210 varas and East and West 210 varas in the S.E. corner of the thirty acres; (2) On November 18, 1889, Hobgood conveyed to J. J. Farrell a tract described as containing five acres and running North and South 373⅓ feet and East and West 583.3 feet. This tract of land lies immediately North of the Ivey tract; (3) On July 22, 1890, Hobgood conveyed to Mrs. S. F. McCright a tract of land in the S.W. corner of the thirty acres, the McCright tract lying west of the Farrell and Ivey tracts; (4) On July 22, 1890, Hobgood conveyed to Mrs. Lou Wilson, the Predecessor in title to appellees Taylors, the North part of the thirty acre tract, with the description of the tract conveyed being as follows:

"All that certain tract or parcel of land situated, lying and being in the County of Bowie and State of Texas, about 2½ miles North from Texarkana, a part of the Headright Survey of Willis Oldham, and described as follows:

"Begining at the N.W. Corner of a tract of 11 acres this day deeded to Mrs. S. F. McCright;

Thence North 123½ vrs. to the S.W. corner of Prewitt's 40 acre tract;

Thence East with Prewitt's S.B. line 420 vrs. to State Line;

Thence South with the State line 83⁶⁰⁄₁₀₀ vrs. to the N.E. corner of Farrel's 5 acre tract;

Thence West with said Farrel's N.B. line 210 vrs. to his N.W. corner;

Thence South 37⁹⁰⁄₁₀₀ vrs. to Mrs. McCright's N.E. corner;

Thence West with Mrs. McCright's N.B. line to the beginning, containing 7⅖ acres, more or less."

Subsequent deeds in the Taylor chain of title show the South call to be "Thence South with the State Line 85⁶⁰⁄₁₀₀ vrs. to the N.E. corner of Farrel's 5 acre tract", and throughout the trial the South call was referred to as 85⁶⁰⁄₁₀₀ varas. The location of the four tracts next above referred to are correctly shown on Plaintiff's Exhibit No. 40.

Immediately north of the Lou Wilson tract was the north 40 acres of the original 70 acre tract above referred to, which was at that time known as the R. F. Pruitt tract. At the time of the trial it was known as the Brown tract.

The dispute in question arose by reason of the fact that the North-South line on the East side of the Lou Wilson tract (as described in the deed from Lou Wilson to W. H. Taylor (father of appellee Taylor) called for a distance of 85⁶⁰⁄₁₀₀ varas extending from the S.E. corner of the Pruitt (now Brown) tract "to the N.E. corner of Farrel's 5 acre tract."

On the ground the distance from Pruitt's (Mrs. Brown's) S.E. corner to the N.E. corner of the J. J. Farrell tract is 17 feet 9 inches less than 85⁶⁰⁄₁₀₀ vrs. as called for in the deed to W. H. Taylor.

On March 25, 1965, appellants Bounds and wife were the owners of the J. J. Farrell tract and the Peter Ivey tract. On that date Bounds and wife conveyed to appellant Cargile 5.62 acres of land extending from the north line of the J. J. Farrell tract to the South.

W. H. Taylor and wife died intestate. D. H. Taylor was their son. D. H. Taylor in 1954 purchased from the other Taylor heirs the remaining interests in the W. H. Taylor tract. Each of the deeds. in appellee Taylor's chain of title, other than the Wilson deed (sometimes describing it as 7⅝ths of land, rather than 7⅝ths acres) contained a South call for a distance of 85.6 vrs. rather than 83.6 vrs., and in each of said other deeds the description was the same with the reference on the East Line, and the South Line was always to the N.E. corner of the Farrell tract and with the North boundary line of the Farrell tract to its N.W. corner.

We think that the tract conveyed to Lou Wilson, and thereafter to the Taylors by the terms of its description stopped at the N.E. corner of the Farrell tract. The Wilson (now Taylor) tract joined the Farrell (now Cargile) tract on the north.

It is our view that Cargile, as successor in title by conveyances from Bounds and Bounds' predecessors who held the Farrell title, is the record owner of the land up to the north boundary of the Farrell 5 acre tract for the following reasons:

(1) The deed from the common source of title to Farrell from Hobgood was a prior conveyance to the deed from Hobgood to Wilson, and the deed to Farrell was recorded prior to Wilson's deed.

(2) Under the rules of construction as to comparative dignity of calls, the call in the Wilson description "to the N.E. corner of the Farrel tract" controls over the call for distance of 83.6 (or 85.6) varas set out therein. In this connection see Crosby-South Plains Ry. Co. v. Hutchinson, Tex. Civ.App., 204 S.W.2d 643, wr. ref. n. r. e. (1947), wherein it was stated in part as follows:

"that calls in a deed for quantities and for courses and distances must yield to calls for lines, corners and objects fixed upon the ground or capable of definite ascertainment. Woods v. Robinson, 58

Tex. 655; Mosley v. Edds, Tex.Civ.App., 80 S.W.2d 401; Carter v. Texas Company, 126 Tex. 388, 87 S.W.2d 1079; Snyder v. Magnolia Petroleum Co., Tex. Civ.App., 107 S.W.2d 603; Chesson v. LaFlore, Tex.Civ.App., 191 S.W. 745."

Appellants' points 1, 2 and 3 are sustained.

Appellants by their points 4, 5, 6, 7 and 8 contend to the effect that the trial court erred in holding that appellees Taylors perfected title to the tract in controversy because the undisputed testimony of appellees showed that the controversy was merely a boundary dispute, that the trial court erred in holding that appellees had acquired title by limitation under the ten year and three year statutes of limitation, and that the trial court erred in concluding that the Bounds' title failed and erred in concluding that Cargile was entitled to recover $3,334.-50 from Bounds. Appellants' remaining points attack the trial court's findings of fact Nos. 9, 10, 11, 12, 14, 15, 16, and 18, as being supported by "no evidence" and as being so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

We agree with appellants that the judgment of the trial court can not be sustained under the three year statute of limitations because the deeds that appellees hold under do not describe the strip of land in controversy. See 2 Tex.Jur.2d, "Adverse Possession", § 145, and authorities cited therein. Appellants' 6th point is sustained.

After carefully reviewing the entire record we hold that there was ample evidence of probative force to support fact findings Nos. 9, 10, 11, 14, 15, and 18, and that none of such findings were so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' points complaining of these findings are respectfully overruled. We think the above fact findings and the entire record in the case constitute a sufficient basis for support of the judgment of the trial court under the 10

year statute of limitations. Fact finding No. 16 is approved except for the words "under the color of their deeds". Fact finding No. 12 to the effect that the fence in question turned a cow is deemed as not being adequately supported by the evidence; there was evidence that the fence would turn a cow, there was evidence that the Taylors had a cow, but the record does not pinpoint the exact time they had the cow and the record does not affirmatively show that the fence did actually turn a cow. However, we regard Fact finding No. 12 as more or less immaterial and the judgment can be sustained on the other findings and other evidence in the record under the 10 year statute of limitations.

Appellants strongly contend that the undisputed testimony of appellees showed that the controversy was merely a boundary dispute and point out various portions of appellees' testimony on cross-examination to the effect that they were claiming the land under their deed, that their deed called for the disputed tract, that they didn't want any land that they did not own under their deed, and matters of like import. However, on re-direct examination Mrs. Taylor stated that they were claiming the property to the fence line that they established as well as by the deed, that the land was their homestead, that they resided on the land, that they were claiming the land on the East and South boundary lines, that it was established ten years ago or more, and that the fence in question had been there more than ten years and that it would turn cattle. On cross-examination Mrs. Taylor also testified to the effect that the fence in question enclosed her yard (or a part of it).

For a discussion of some of the problems posed as to whether a suit is a boundary dispute alone or a suit under the limitation statutes see 2 Tex.Jur.2d, Adverse Possession, § 91. We quote in part from said article as follows:

"* * * When the evidence raises an issue as to whether a claimant ever intended to claim any more land than was actually included in his grant, that issue is to be determined by the trier of the facts." (Emphasis added).

In Major et al. v. Meyers et ux., Tex. Civ.App., 111 S.W.2d 1184, no writ (1937), it was held that land which was not covered by adverse possessor's deed and was adversely claimed and used by such possessor for over ten years was acquired by adverse possession even though possession was the result of mistake in boundary line and possessor thought land was covered by her deed and expressed willingness to vacate the land after the statutory period had run. We quote from the court's opinion in said case as follows:

"Plaintiffs in error contend that the concrete coping and the fence were put 14 inches over on lot 16 by mistake, as the boundary line between lots 16 and 17, and that where there is a mistake in locating the boundary line fences, and the owner of the property fenced by mistake claims only the property called for in the deed, there can be no adverse holding sufficient to start the statute of limitation; that the concrete coping and fence were placed by mistake on lot 16, and that the Court of Civil Appeals is not bound by the trial court's findings 'where there is no evidence to support his findings, or where the judgment is against the great preponderance of the evidence.'

"We think the evidence clearly shows that the coping and fence were put on plaintiffs' lot 16 by mistake; and that while the defendants and their predecessors in interest claimed title under their deed to the overlapping lot 17, they also occupied and used adversely the strip of land in controversy as a part of their lot 17 for more than ten years before the filing of the suit. It is true the evidence shows at one time defendants expressed to plaintiffs a willingness that the fence be moved to the proper boundary line between lots 16 and 17, but such expression of willingness was made after the full period of ten years' adverse pos-

session and claim had matured the title, and did not tend to affect their good faith of the claim of ownership or adverse possession. Defendants claimed title to the strip of ground in their pleading and in their evidence.

"The question presented here is whether defendants can establish title under the ten-year limitation statute, Vernon's Ann.Civ.St. art. 5510, when the boundary line under which they claim was established by mistake.

"The question is ruled against plaintiffs' contention in McCabe v. Moore, Tex.Civ.App., 38 S.W.2d 641, 642, in which case it is held: 'A plea of title by the 10-year statute of limitation is supported by possession for the required period and claim of ownership under a deed, although the deed does not include the disputed tract,' and refers to a number of cases as so holding. 2 Tex.Jur. 125, par. 65.

"Citing with approval the case of Alexander v. Wheeler, 69 Ala. 332, 340, our courts in Hand v. Swann, 1 Tex.Civ.App. 241, 21 S.W. 282, and Daughtrey v. New York & T. Land Co., Tex.Civ.App., 61 S.W. 947, 948, state the rule to be that 'where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, even though the established line is erroneous, and the claim of title was the result of the mistake,' the claimant's adverse possession and claim of title would not be defeated by reason of the error and mistake in the location of the fence as the boundary line.

"As said in the case of Bruce v. Washington, supra, 80 Tex. 368, 15 S.W. 1104, the legal effect of the facts referred to in the opinion to which we refer without quoting them here cannot be destroyed or impaired by a mere declaration, after the right attaches by virtue of the law, that the claimant was not claiming plaintiff's land by limitation.

To the same effect in the case of Jayne v. Hanna, Tex.Civ.App., 51 S.W. 296, 297, where it is said: 'Does the fact that appellee held adverse possession of the land under the belief that it was covered by her deed, and that she had perfect title to it, when in fact it was not embraced within her purchase, deprive her possession of any element necessary to support the plea of limitations? This question we regard as settled in the negative.

"* * *."

Also in this connection see Chittim v. Auld, Tex.Civ.App., 219 S.W.2d 702, wr. ref., n. r. e. (1949), and authorities cited therein.

We think that when the entire evidence of the appellees Taylors, with respect to their adverse claim to the land up to the fence they constructed in 1955, given on direct examination, cross-examination and re-direct examination, is considered, including any and all inconsistencies therein, if any, that such inconsistencies (if any) were matters for the trial court (the trier of the facts and the judge of the credibility of the witnesses and of the weight to be given their testimony) to reconcile, and that such evidence raised a fact question as to whether appellees Taylors were claiming the strip in question adversely up to the fence they built in 1955, and for more than 10 years consecutively thereafter. It is well settled law that inconsistencies in the testimony of a witness are generally matters for the trier of the facts to determine or reconcile as stated in Tunnell v. Van School District No. 53, Tex.Civ.App., 129 S.W.2d 825, writ dism. judg. cor. (1939), as follows:

"The fact that other testimony of Wells may be inconsistent with the above statements does not take from the whole of his testimony its probative force as regards the construction the jury decided to place upon it. It is for that fact-finding body to reconcile such inconsistencies. Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68, 76;

Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365."

Also in this connection as to whether a fact issue of adverse possession under the 10 year statute was raised see Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453 (1944), wherein it was stated in part as follows:

"Doherty contends that the evidence in this case entitles him to a judgment awarding him the title and possession of this land because it shows conclusively that Pearson did not claim adversely as against the true or real owner, and therefore shows that Pearson has not acquired title by the Ten Year Statute of Limitation. We overrule this contention. In our opinion the evidence contained in this record raises a fact issue on the question of adverse claim and possession. It is true that Pearson, in his deposition taken before the trial, stated that he was not trying to take this land away from those who owned it; but at the trial itself Pearson testified that since 1925 he had never acknowledged that any other person than himself owned this land, and that since 1925 he had always claimed it for himself. The record in this condition presents a fact question. Stewart v. Luhning, 134 Tex. 23, 131 S.W.2d 824; O'Meara v. Williams, Tex.Civ.App., 137 S.W.2d 66."

Also see Payne et vir. v. Priddy ex ux., Tex.Civ.App., 371 S.W.2d 783, no writ (1963), wherein it was stated:

"In the instant case the testimony of Cox relied upon by plaintiffs, viewed in the light of all his testimony, at most, merely raised a fact issue as to whether he claimed the disputed strip adversely from the time of the erection of the fence. Liles v. Sawyer, Tex.Civ.App., 257 S.W. 2d 512; Pearson v. Doherty, supra; Pasha v. Schell, Tex.Civ.App., 229 S.W.2d 818, error ref.; Gleckler v. Denton, Tex. Civ.App., 149 S.W.2d 213, dismissed, correct judgment; 2 Tex.Jur.2d pp. 188–191, §§ 90–91."

In summation, it is our best judgment that there is evidence of probative force in the record to support the judgment of the trial court under the ten year statute of limitations, and that the judgment of the trial court on that theory is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Finding that the trial court entered a correct judgment under the record in this cause, the judgment of the trial court is accordingly affirmed.

Affirmed.