### CHESSON v. LA FLORE. (No. 132.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1916. Rehearing Denied Jan. 24, 1917.)

BOUNDARIES ⬅3(6)—CONSTRUCTION—LINES LOCATED AND MEASURED.

Where the boundaries of a grant as actually located and measured on the ground were so described in the deed, they are the limits of the grantee's rights, although the parties intended to make the northern line common with the northern boundary of a larger tract erroneously surveyed and subsequently found to be further north than the boundary described in the deed.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 24–29; Dec. Dig. ⬅3(6).]

Appeal from District Court, Orange County; A. E. Davis, Judge.

Action by Henry La Flore against Clifton Chesson. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Holland & Holland, of Orange, for appellant. Bisland & Bruce and J. T. Adams, all of Orange, for appellee.

BROOKE, J. This is an action of trespass to try title brought by appellee against appellant to recover a part of the William Dyson league of land in Orange county. There was a plea of not guilty, pleas of five and ten years' limitation, and improvements in good faith. Judgment was for plaintiff.

The land sued for is a part of a 60-acre tract formerly owned by one Simeon Michel,

who is relied on as the common source of title. When the parties, plaintiff and defendant, acquired their respective portions of this 60-acre tract, the northern boundary was along a public road opened and supposed to be on the north line of the Dyson league. Subsequently it was ascertained that the north line of the Dyson league lay about 70 varas further north, and a new public road was established on the new line. This gave rise to the issue in this suit, it being the basis of plaintiff's suit that moving the northern line of the Dyson 70 varas further north automatically moved the north line of the 60-acre tract, which called for the same 'distance, thereby giving 65 acres to the 60-acre tract, and defendants being the owner of 20 acres on the north and plaintiff the owner of the remainder, would own the 5 acres on the south made vacant by moving the defendant's land 5 acres north, and it is this 5 acres that is the subject of the suit. In other words, and perhaps it might be well to restate it thusly: Treville Granger, Sr., died in 1887, owning approximately the northern 1,500 acres of the William Dyson survey in Orange county, Tex. Treville Granger, Sr., left five heirs, among whom was Treville Granger, Jr. A partition was had between these five heirs, and Treville Granger, Jr., was awarded the 300 acres lying on the north of the tract. This was afterwards partitioned into 60-acre tracts, among the heirs of Treville Granger, Jr., and the 60-acre tract referred to in this suit was awarded to Madeline Wilkerson, wife of John Wilkerson, who afterwards conveyed the same to Simeon Michel. Simeon Michel lived on the tract at the time of the partition between the Treville Granger, Sr., heirs. Both appellant and appellee derived title from Simeon Michel. The 60 acres of land. more or less, was described as follows:

"Beginning on the northwest line of William Dyson survey, a post in prairie. Thence south 1000 varas to a post in prairie. Thence east 344 varas to a post in prairie. Thence north 1000 varas to a post for corner. Thence west 344 varas to the place of beginning."

This deed is the origin of plaintiff's title, and plaintiff makes no proof of title beyond it, and relies upon it being the common source of title. In May, 1896, Michel and wife sold Jule Gott 15 acres of the 60-acre tract, commencing at its northeast corner. This 15 acres passes regularly into the defendant, Chesson; that is, Jules Gott to Henry Ruff, Henry Ruff to John Wilkerson, John Wilkerson to Clifton Chesson. In June, 1905, Anna Michel conveyed to defendant Chesson 5 acres adjoining the 15 acres. This makes the 20 acres owned by defendant. Four or five years after the sale of the Chesson two tracts, Anna Michel conveyed to plaintiff the balance of the 60 acres, excepting the 20 acres owned by defendant. The particular 60 acres to which this suit applies was actually run on the ground by the surveyor and the lines marked on the ground by the surveyor, and its ownership, as stated above, fell to Madeline Wilkerson, wife of John Wilkerson, who immediately sold the land as thus actually located to Simeon Michel, on November 8, 1895, and Michel immediately went into possession. Michel and his vendee, down to and including defendant, have been in continuous possession since that time. The defendant, Chesson, acquired under Michel two tracts, parts of this 60-acre tract, one of ·15 acres on March 9, 1903, and one of 5 acres June 10, 1905. The plaintiff acquired under Michel the remaining portion of the 60-acre tract, December 15, 1908, his deed describing the land as follows:

"All that certain tract or parcel of land lying and being situated in the county of Orange and state of Texas, and containing 60 acres save and except 20 acres of land heretofore sold to Cliff Chesson out of the north part of said 60 acre tract. Said 60 acres being a part of the William Dyson survey of land and described as beginning at a post in the prairie on the north boundary line of said William Dyson survey, thence south 1000 vrs. to a post in prairie. Thence east 344 vrs. to post in prairie. Thence north 1000 vrs. to post for corner. Thence west 344 vrs. to the place of beginning, it being intended to convey to the said Henry La Flore, Jr., 40 acres of land more or less out of said 60 acre tract."

Defendant's deed to his 15-acre tract describes it as follows:

"Commencing at the N. E. corner of a 60 acre tract of land sold by Levy Wilkerson and wife to Simeon Michel as per deed dated Nov. 28. 1888; thence west 250 vrs.; thence south 339 vrs.; thence E. 250 vrs.; thence north 339 vrs. to the place of beginning, containing fifteen acres of land, being the same land conveyed by Henry Ruff and Felevmon Ruff, husband and wife to John Wilkerson by deed dated the ·8th day of Dec., 1902, to which reference is here made for better description."

And his 5-acre tract is described as follows:

"Commencing at the northwest corner of a fifteen-acre tract of land now owned by the said Chesson. Thence west to the land of Mrs. Sis Granger, thence south 334 vrs. to corner, thence east to the Chesson fifteen acre tract of land, thence north to the beginning to contain five acres of land more or less the same being a part of the Wm. Dyson headright survey."

Defendant's 15-acre tract is described in the deed from Michel to Gott as follows:

"All that certain tract or parcel of land being a part of the Wm. Dyson headright survey in Orange county west of Cow Bayou commencing at the N. E. corner of a sixty acre tract of land sold by Levy Wilkerson and wife to Simeon Michel as per deed dated November 28th, 1888; thence W. 250 vrs.; thence S. 339 vrs.; thence E. 250 vrs.; thence N. 339 vrs. to the place of beginning to contain fifteen acres of land and no more."

The 60-acre tract was thus located and measured on the ground, and it stands by that location. To our minds, it makes no difference that the parties intended to make its northern line common with the Dyson line, and, perhaps, thought that they were doing this. Nevertheless, the fact remained that it was not done. Therefore, in our judgment, this is not a boundary suit, for the way we view the case is that it makes no

difference where the true northern boundary line of the Dyson survey is located. Michel, after the location and survey of the 60-acre tract was fixed and fully defined and located on the ground, sold first to this appellant 15 acres, and later sold 5 acres, and this was located on the ground. How could it be said, in view of these facts, that the fact that the true northern line of the Dyson was found to be 70 varas further north, that this actual location of the 15-acre tract and the 5-acre tract, within the well-defined limits of the 60-acre tract which had been actually located and was well defined, could have any bearing, so far as the removal of the appellant's two tracts was concerned, and that they were in any way dependent upon the true north line of the Dyson? However, we are not left in any confusion as to what the law would be and is under circumstances of like character, for in the case of Koenigheim v. Miles, which was a case decided by the Supreme Court, 67 Tex. 122, 2 S. W. 86, the court says:

"The evidence clearly shows that the north boundary line of survey No. 323 is several hundred yards further south than it was supposed to be when the deed from De Witt to Miles was executed, as has previously been stated. The defendants, who have assigned errors, pleaded in reconvention, and set up claim to the tract of land in the true northeast corner of survey No. 323, which corresponded to the boundaries in their deed. Their plea contained the statutory elements of an action to try title. Testimony was introduced by plaintiff to show that the land conveyed in the deed was situate in the northeast corner of the survey as it was then supposed to be, and not in the northeast corner of the survey as subsequently established, and it was satisfactorily proved that the tract had been surveyed upon the ground and its corners marked, and that the description in the deed corresponded accurately with these marks. The agent through whom the purchase was made testified that this was the land actually sold and intended to be conveyed, and Miles himself testified that he went into possession and built a house upon it. Now the appellants in the cross-appeal claim that by reason of the fact that the deed called for the northeast corner of survey No. 323 they have the right to claim the land in the northeast corner of the true survey, embraced by lines running the course and distance called for in the deed, or at least all of that tract which is included in the conveyance from De Witt to plaintiff, and that it was error to admit the evidence showing that the land described in his deed was not a part of the true survey. But the law does not sustain his claim. Having bought a well-defined tract marked upon the ground, he acquired such title as his grantor had in this, and no right to any other land. If the call for the northeast corner of survey No. 323 was false (and the evidence showed that this was a fact), this call must be rejected and disregarded. The rule is general that the boundaries of a grant as actually surveyed are the limits of the grantee's right, and will control calls for the unascertained boundaries of existing surveys"

—and likewise, in the case of Blassingame v. Davis, 68 Tex. 596, 5 S. W. 402, the court says:

"The matter in controversy in this case is the location of the division line between two tracts of land, one of 43⁴/₁₀ acres, owned by Blassingame, and the other of 202⁶/₁₀ acres belonging to the appellee. Both these tracts at one time belonged to Mrs. Francis Ann Lacey, and formed one tract of 246 acres. On August 13, 1860, she conveyed the first-named tract to Mary H. Arnold, and by mesne conveyances it became the property of Blassingame in 1866. Mrs. Lacey's deed to Mary Arnold described the land conveyed by metes, bounds, and landmarks, and it was satisfactorily shown upon the trial that these lines were actually run, and that the landmarks were made, and were at the proper course and distance from each other.

"In September, 1861, Mrs. Lacey and her husband conveyed, to the person under whom the appellees claim, the remainder of the 246-acre tract, after excepting from the conveyance the portion previously deeded to Mary H. Arnold. In describing the remainder thus conveyed, the southwest corner of the Blassingame land was made the southeast corner of the Davis tract, the western line of the former was made the eastern line of the latter, and the northwest corner of the former the northeast corner of the latter. The description by bearing trees of these common corners was the same in each deed, and the course and distance of the corner boundary was identical. These corners were identified by persons who had seen some of the bearing trees and the remnants of others, which was the case also with reference to the beginning or southeast corner of the Blassingame survey, and the common or division line between the two tracts was shown to have been marked throughout its entire length, from the southwest to the northwest corner of Blassingame.

"It is claimed by the appellees that these facts fix the boundary between them and Blassingame at the marked line referred to, and the judgment below is in accordance with their claim. On the other hand, the appellant contends that the surveyor who originally ran off the 43⁴/₁₀-acre tract made a mistake in the beginning corner, commencing the survey 80 varas east of the Lacey tract, and on land belonging to one Nail, instead of at the southeast corner of the tract above mentioned. This was fully established by the evidence; and it was further shown that if he had commenced at the true southeast corner of the Lacey tract, as required by the field notes of his survey, and then run the course and distance of the first line, the southwest corner of Blassingame would have been so located as to place the division line 80 varas west of where it is situated according to well-defined artificial objects.

"The effect of the surveyor's mistake was to put the entire 43⁴/₁₀-acre survey 80 varas east of where it should have been, and the appellant says the court below should have located it in the proper place. But this would have been to change the boundaries of a survey marked upon the ground 23 years before, and at the time when it was first severed from the original 246 acres, of which it had formed a part. The court would have disregarded a cardinal rule in ascertaining the true boundaries of a survey, which requires the footsteps of the surveyor to be followed, and instead thereof have laid out a path which he should have pursued. It would have substituted intention for actual fact, and instead of ascertaining the true location of the survey, would have removed it to where it should have been placed. This would have violated the plainest principles of law, and in the present case worked great injustice. Here the lines of the lands bought from Mrs. Lacey by the person under whom Blassingame claims were defined and fixed by artificial marks and objects long before she sold to George Davis, the ancestor of the appellees. With these well-marked objects before his eyes he bought all the balance of the 246-acre tract, and he bought up to them, as appears from the call of his deed. If they were wrong, it was not his fault, but in part, at least, the fault of the person who originally

bought the 43⁴/₁₀ acres from Mrs. Lacey and under whom Blassingame claims. For this fault the appellees should not suffer and be made to lose a part of their land for the benefit of appellant, whose vendor's conduct led their ancestors to purchase up to the line claimed by them" —which, indeed, seems to dispose and set at rest the contention of the parties in this case. Mrs. Michel, also, it is contended by the appellant, while she owned the land, and while she was an adjoining owner with the appellant, pointed out to him the dividing line between them. She and her husband were defendant's vendors. Upon this line defendant seems to have built his fence, and it seems that his fence is now upon this line. We do not deem it necessary, in view of the authorities as cited, and which we think are conclusive, that any comment be made in reference to the action of the court or jury. As a legal proposition, the fact that the appellant's land was plainly marked and defined on the ground, both the 60-acre tract, and his 15 and 5 acre tracts, would preclude any recovery on the part of the appellee in this case. Therefore, having examined the record, and believing that the judgment rendered against this appellant was error, we are of opinion that this cause should be reversed, and should be here rendered in favor of appellant; and it is so ordered.

Reversed and rendered.