SNYDER et al. v. MAGNOLIA PETROLEUM CO. et al.

No. 1660.

Court of Civil Appeals of Texas. Eastland.

May 21, 1937.

Rehearing Denied July 9, 1937.

Truman Warren, of Tyler, for plaintiffs in error.

Turner, Rodgers & Winn, Thompson, Knight, Baker & Harris, and Wallace Hawkins, all of Dallas, for defendants in error.

FUNDERBURK, Justice.

Thos. Fox, in the year 1900, then owner of the Pleasant McAnally survey in Gregg county, except a certain 200-acre tract, known as the Jack and Ellen Smith 200 acres (hereinafter sometimes referred to as the "Smith 200 acre tract") had a subdivision made of land owned by him and sold and conveyed by deeds to Gaines B. Turner blocks 1, 2, 3, and 4 (among others)

of said subdivision. These subdivisions are situated to the east and north of the Smith 200-acre tract. The following rough sketch will aid in a better understanding of the facts and issues involved:

Block 1: "Beginning at a stake on the east line of Jack Smith's 200 acre tract and 75 varas south from the NE corner of same, a stake on N bank of small branch from which a pin oak bears N 80 W 5

According to the description of the Smith 200-acre tract the southeast corner was a holly tree on the bank of the Sabine river. It was approached by a call to run with the river north 59 degrees E 830 varas from a water oak on the bank of the Sabine river. From the holly tree as the southeast corner the next call was "thence N 610 vrs. a stake from which a whit— oak bears S 67 W 6-6/10, a red oak N 20 W 8 varas."

The southwest and northwest corners and the west lines of blocks 1 and 2, as conveyed to Turner, were described thus:

varas a sweet gum brs. N 35 E 2 varas." Then follow calls east, south and west, the latter with the Sabine river "to a stake the southeast corner of Jack Smith's 200 acre tract; thence N 545 varas to the place of beginning, containing in all 52 68/100 acres of land." Block 2: "Beginning at a stake on the east line of Jack Smith's 200 acre tract and 75 varas south from the NE corner of same on the N bank of branch from which a pin oak brs. N 80 W 5 varas a sweet gum brs. N 35 E 2 varas." After east, north and west calls, the latter to "a stake from which a pine brs. N 13

E 6 varas," the next is "Thence S 545 varas to the place of beginning, containing 52 68/100 acres of land." The southeast and southwest corners and the south line of block 3, as conveyed by Fox to Turner, were described as follows: "Beginning at the northeast corner of Jack Smith's 200 acre tract, a stake from which a white oak bears S 67 deg W 6 varas." Then follow north, west, and south calls, the latter "to a pine for corner from which a post oak bears N 1 vara." The next call is "Thence East with Smith's W B line 637 varas to the place of beginning, containing in all 53½ acres of land."

In this suit, as the nature of the controversy and the relation of the parties to it, finally developed, the heirs of Thos. Fox and/or their assigns occupying the attitude of plaintiffs sought to recover of named assigns of Gaines B. Turner and assigns of the heirs of Jack and Ellen Smith, as defendants, the title to about five acres of land designated in the sketch by the letters C, E, F, D, as its corners.

Plaintiffs in error had no title if Thos. Fox by his deeds to Gaines B. Turner conveyed all the land included in the Pleasant McAnally survey not embraced in the Smith 200-acre tract. He did convey all such land unless by the certain location on the ground of the southwest and northwest corners of block 1 at points C and A and the southwest and northwest corners of block 2 at points A and B it resulted that the west boundary lines of said blocks 1 and 2 being the line C A D B, was not coincident with the east boundary line of the Smith 200-acre tract, but to the east of same. If said lines were not coincident it was evidently because of a mistake on the part of the surveyor in locating said blocks 1 and 2, since their description called for adjoinder with the Smith 200-acre tract on the west.

Upon a jury trial, after the court had overruled a motion by the defendants for an instructed verdict in their favor, the following special issues were submitted:

"Special issue No. 1: Do you find from a preponderance of the evidence that the east line of the Jack & Ellen Smith tract of land as located upon the ground is along and the same as the west line of the Ziegler tract of land as that line is located upon the ground? Answer yes or no.

"If you have answered the foregoing issue 'yes' you need not answer the following issues; but if you have answered same 'No' then answer the following issues:

"Special issue No. 2: Do you find from a preponderance of the evidence that the southeast corner of the Jack & Ellen Smith tract as originally located is now identified at a holly stump on the north bank of the Sabine River from which a large pine stump bears south 20 East 6 varas and another pine stump bears south 20 West 6 varas? Answer yes or no. Answer: ———

"Special issue No. 3: Do you find from a preponderance of the evidence that the northeast corner of the Jack & Ellen Smith tract as originally located is at a point 7 varas south 45 east from a large spring? Answer yes or no. Answer: ———."

The jury, having answered special issue No. 1 "Yes", did not answer special issues 2 or 3, in accordance with the direction not to do so if special issue No. 1 was answered "Yes." From a judgment for defendants rendered in accordance with the verdict the plaintiffs have prosecuted writ of error.

 Plaintiffs in error have but one assignment of error, the ground of error therein being the action of the court in submitting special issues Nos. 2 and 3, conditional upon a negative answer to special issue No. 1. Unless, as alleged by plaintiffs in error, the east boundary line of the Smith 200-acre tract was a line now located on the ground "beginning at a large holly stump on the north bank of the Sabine River from which a large pine stump brs. 20 deg. E 6 varas, another large pine stump bears S 20 deg. W 6 vrs." and running thence "N 195 vrs. to an iron pin for corner" from which "a large white oak tree stump brs S 67 W 6.6 vrs and a large spring brs. N 45 W 7 vrs.," or in other words, the line E F on the sketch, plaintiffs had no right to recover in any event. The burden was upon them, therefore, to prove by a preponderance of the evidence that said east line was located as alleged, or, in other words, was the line E F. The location of the west boundary lines of blocks 1 and 2 (line C A D B) was undisputed. Whatever evidence there was, if any, tending to show that said west lines of blocks 1 and 2 were in fact coincident with the east boundary line of the Smith 200-acre tract was rebuttal evidence upon the issue which plaintiffs had the burden of

establishing, namely, that E F was the east boundary line of the Smith 200-acre tract. Special issue No. 1 was, therefore, a defensive issue. It was analogous to an issue of unavoidable accident in a negligence case. If, in a negligence case, the court should submit an issue of unavoidable accident, and submit issues of the negligence of the defendant, proximate cause, etc., only upon condition of a negative answer to the issue of unavoidable accident, there could be no room for doubt, we think, that such manner of submission would be erroneous. That each party in a case submitted to a jury for a special verdict upon special issues has the right to have submitted affirmatively and unconditionally, the issues which, by the pleadings and supported by evidence which the law imposes upon him the duty of establishing in order to maintain his action or defense cannot be doubted. 41 Tex.Jur. 1115, § 280. If the court wholly omits to submit any such issue the party charged with the duty of having it established must as a condition upon his right to complain of such omission upon appeal duly and timely request its submission. But where, as here, the court does not fail to submit such an issue, but submits it only conditionally when the right of the party is to have it submitted unconditionally, a review of such action may be had upon showing that due and timely objection was made to the improper submission. The conditional submission of the issues which plaintiffs in error had the burden of establishing was duly objected to by them, and, in our opinion, a reversal of the case is required, unless defendants in error's cross-assignment of error, for one or more of the reasons urged, should be sustained.

■ Defendants in error contend, in effect, that the conditional submission of said issues was not erroneous, because plaintiffs in error, in order to show title, if any, in themselves, had the burden of proving that the Smith 200-acre tract did not include the 5-acre tract in suit. It certainly did not include it, of course, if the east line of the Smith 200-acre tract was coincident with the west boundary lines of blocks 1 and 2. The principle invoked is that declared in such cases as Maxwell Land-Grant Co. v. Dawson, 151 U.S. 586, 604, 14 S.Ct. 458, 38 L.Ed. 279; Ball v. Carroll, 42 Tex.Civ.App. 323, 92 S.W. 1023, etc., to the effect (without intention to be exact) that when all of a tract of land is conveyed with exceptions, the deed is not proof of title without proof of the location of the land excepted. We are unable to perceive that that principle is of any importance here. Plaintiffs in error, by establishing the issue or issues which they were required to establish in order to recover at all, would thereby at the same time establish the fact that the Smith 200-acre tract did not include the 5-acre tract in suit. That so far as we can see did not affect the right of plaintiffs in error to have the issues necessary to be established by them submitted unconditionally and independently of any findings of the verdict upon a defensive issue. The deed by which the Smith 200-acre tract was conveyed was in evidence. The only real issue in the case from the standpoint of the plaintiffs in error was whether its east boundary line was the line E F. If such east line was the line C A D then, of course, it was not E F. As said before, all evidence tending to show that it was C A D was in rebuttal of the alleged fact that it was E F. Whether then such east line was C A D or to the east or west of that line, plaintiffs in error could only recover by proving either conclusively, or by procuring a finding of the fact that such east line was the line E F.

Three reasons are urged under defendants in error's cross-assignment of error, any one of which, if sustained, would render the error in the conditional submission of the issues Nos. 2 and 3 immaterial.

The first reason is the subject of a proposition as follows: "The undisputed facts show that Thos. Fox, his heirs and assigns, had acquiesced in the fence line built along the west line of the Zeigler tracts Nos. 1 and 2 [Blocks 1 and 2 in sketch] for a period of time beyond that required by the statutes of limitation in Texas to mature title by adverse possession, and such acquiescence for such period of time established the fence line as an agreed line, as a matter of law."

■ We are not convinced that the principle by which boundary lines may become established by acquiescence is applicable to the facts of this case. Application of that principle is restricted to cases wherein contiguous tracts of land have certainly a common boundary line between them, the location of which on the ground is for some reason doubtful or uncertain. It can have no application, we think, in a case like this where the location of the boundary line of one of two supposedly contiguous

tracts of land is not doubtful or uncertain, but where the principal, if not the only, doubt or uncertainty involved is whether the tracts are in fact contiguous, or have one boundary line common to both. If the 5-acre tract in suit has any actual existence outside the limits of both the Smith 200-acre tract and blocks 1 and 2, which it must have if plaintiffs in error are entitled in any event to recover, then the east boundary line of the Smith 200-acre tract is not a line coincident with the certainly located and established west boundary line of blocks 1 and 2. A fence along the west boundary line of blocks 1 and 2 (C A D) whenever built and however long maintained could, in the very nature of the case, afford no evidence of an acquiescence on the part of plaintiffs in error, or those under whom they claim, that such fence marks the east line of the Smith 200-acre tract. They neither have nor claim any interest in the Smith 200-acre tract. Even if the facts are as they now contend, they never had a right to object to the maintenance of the fence on the line C A D. The maintenance of the fence on that line could work no possible injury or prejudice to them. In our opinion rights cannot be lost solely because of acquiescence in acts to which one never under any circumstances had a right to object.

The next reason urged to sustain the cross-assignment of error is stated as a proposition as follows: "Where one corner of a tract of land is established by undisputed evidence, the tract can, as a matter of law, be reconstructed and located from that one corner." To concede the proposition would not, we think, show conclusively that the court erred in refusing the requested peremptory instruction. Where one corner of a tract of land is established by undisputed evidence it may be true not only that the tract can as a matter of law be reconstructed and located from that one corner, but should be so located, in the absence of any better evidence to show the location. But suppose, where one corner is so established there be evidence to show that the surveyor actually located corners and lines on the ground different from such as would be located by courses and distances from the known corner? We understand the rule to be that evidence to show where lines were actually run and corners established by the surveyor when in conflict with calls for course and/or distance will prevail. We con-

sidered this same point on rehearing in the recent case of Southern Pine Lumber Co. v. Whiteman (Tex.Civ.App.) 104 S.W.(2d) 635. In that case we reached the conclusion that where there was testimony to the actual location of objects called for in the field notes marking the lines and corners of a survey which were no longer in existence, the fact that they could be established by course and distance from an undisputed point would not be conclusive. The authorities, among many which we think sustain that view, are Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304; Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317; Welder v. Carroll, 29 Tex. 317, 318.

The third reason advanced under the cross-assignment of error is this proposition: "Parties and privies are bound by the recitals in deeds made by them or under which they hold." Since the metes and bounds of blocks 1 and 2 called for adjoinder with the Smith 200-acre tract it is insisted that, as a matter of law, plaintiffs in error are estopped to show the contrary, because of such call for joinder. It occurs to us that if this proposition, undoubtedly sound as a general statement of a legal principle, be applicable to the facts of this case, then for all practical purposes a call for an adjoining survey must be held to control the location of corners and lines actually marked on the ground by the surveyor. The southeast corner of the Smith 200-acre tract, according to the calls in the deed, was a holly tree on the bank of the river. The undisputed southwest corner of block 1, according to witnesses, was, at the time the tract was surveyed, at a holly tree not called for, however, in the field notes. The evidence raises a real question of the identity of these trees. The stump of one holly tree is still on the ground. Plaintiffs in error contend this is the stump of the tree called to mark the southeast corner of the Smith 200-acre tract. The holly tree which according to the other witnesses stood at the undisputedly established southwest corner of block 1 caved into the river and was washed away. Let us suppose, as this and other evidence suggests may be possible, there were two holly trees and the surveyor Hoskins in surveying blocks 1 and 2 located the southwest corner of block 1 at the wrong holly tree by mistake; and for that reason alone called the corner to be at the southeast corner of the Smith 200-acre tract. In that case the metes and bounds of the land conveyed by Fox to

Turner would not include the 5-acre tract in dispute. Would the mere mistaken call for the southeast corner of the Smith 200-acre tract estop Fox, or his heirs and assigns, from now proving, if they can, the true line and corners and thereby establishing title to land owned by Thos. Fox and under the supposed case, never conveyed to any one? If so, then a mistake in a call for adjoinder with another tract of land would have the effect of conveying by estoppel land outside of the lines and corners of the land conveyed by the deed.

It must be borne in mind that the deed from Fox to Turner evidenced no intention to make the call for adjoinder with the Smith 200-acre tract control an actual, even though mistaken, location of the corners and lines of blocks 1 and 2. So far as the deed shows the call for the southeast corner of the Smith 200-acre tract to be the southwest corner of block 1 was only to designate the location just the same as a call for any other object, natural or artificial. Nothing suggests that Fox was under any duty or obligation to convey to Turner all the land he owned in the Pleasant McAnally survey, being all of said survey except the Smith 200-acre tract. It is not of controlling importance that he may have thought he was doing so. If, as all the parties seem to agree, the assigns of Gaines B. Turner have all the land conveyed by the Fox-to-Turner deed, and there exists no doubt, uncertainty, or dispute as to its true location, then, theoretically at least, defendants in error have no material interest in, nor are they prejudiced by the fact that their land may not actually adjoin the Smith 200-acre tract. Without endeavoring here to define limits to the operation of the principle of estoppel by recitations in deeds, it is deemed sufficient to say that in our opinion it cannot be held to operate so as to deny recovery of land lying outside of the certain boundaries of the land conveyed by the deed in which the recitals occur. Koenigheim v. Miles, 67 Tex. 113, 122, 2 S.W. 81, 86; Blassingame v. Davis, 68 Tex. 595, 5 S.W. 402; Chesson v. LaFlore (Tex.Civ.App.) 191 S.W. 745. In the first cited case it was said: "The evidence clearly shows that the north boundary line of survey No. 323 is several hundred yards further south than it was supposed to be when the deed from DeWitt to Miles was executed. * * * Koenigheim bought a well-defined tract, marked upon the ground. He acquired such title as his grantor had in this, and no right to any other land. If the call for the north-east corner of survey No. 323 was false, (and the evidence showed that this was a fact) this call must be rejected and disregarded. The rule is general that the boundaries of a grant, as actually surveyed, are the limits of the grantee's rights, and will control calls for the unascertained boundaries of existing surveys."

It is to be observed from the statement of the case that while the field notes of blocks 1 and 2 call for corners and lines of the Smith 200-acre tract they do not call for any of the objects called for in the deed to Jack and Ellen Smith as marking such corners and lines. This is important. If such had been the case, then perhaps no issue of fact could have arisen that the lines were not common. There would then have been involved at most only the question of the true location on the ground of a boundary line unquestionably common to both tracts. As has already been said, such is not the question in this case, but rather plaintiffs in error have the burden of establishing the line E F to be the true east boundary line of the Smith 200-acre tract, and if that be done, they will thereby at the same time establish that the Smith 200-acre tract and blocks 1 and 2 in fact never had a common boundary line.

The result of our conclusions is that the judgment of the court below should be reversed and the cause remanded, which is accordingly so ordered.

### On Rehearing.

We have considered motions for additional findings of fact and for rehearing. We are asked to find as an additional fact that if effect be given to calls for course and distances from an indisputably located corner of a certain 110-acre tract, a part of the Smith 200-acre tract, such 110-acre tract will include the strip of land in controversy.

It may be doubted if the Court of Civil Appeals is under any duty to find undisputed facts. What the undisputed evidence in a case shows is a question of law, of which the Supreme Court has jurisdiction, the same as a court of civil appeals, and does not, therefore, come within the exclusive fact finding jurisdiction of the latter.

The additional fact we are requested to find, if true, would only be evidentiary and not conclusive of the only issue in the case, namely, the location as contended by plaintiffs in error of the east boundary line of the Smith 200-acre tract. Our fact-finding duty does not extend to the finding of merely evidentiary facts not in themselves conclusive of any issue in the case.

Defendants in error in their motion for rehearing indicate a misunderstanding of our opinion upon one point. What we said on the subject of locating a tract of land by courses and distances from an indisputably established corner and a state of facts under which that principle could not apply, had no reference to the 110-acre tract. If the northeast and southeast corners of the 110-acre tract, and the line connecting them as the east boundary line of the 110-acre tract, had been shown conclusively to be coincident with the corners and line contended by plaintiffs in error to be the corners and line of the Smith 200-acre tract, that would not have established conclusively the issue which plaintiffs in error had the burden of establishing. That burden was to show the true location of the east boundary line of the Smith 200-acre tract, according to their allegations. The fact that the parties to the conveyance of the 110-acre tract may have thought it to be at a particular place and so located it, would be no more conclusive upon the issue which plaintiffs in error had to establish than the evidence that the surveyor in surveying lots 1 and 2 thought he was locating the west boundary lines thereof coincident with the east boundary line of the Smith 200-acre tract would be conclusive that they were coincident. If there was no other evidence to show the location of the east boundary line of the Smith 200-acre tract to be as plaintiffs contended than such as was afforded by the deeds conveying and instruments relating to the 110-acre tract, then defendants in error would, perhaps, have been entitled to an instructed verdict in their favor.

There was other evidence which, if true, tended, we think, to show that the northeast and southeast corners and connecting line of the Smith 200-acre tract were located as contended by plaintiffs in error. In fact, except as affected by propositions of law which were overruled, there was no question presented to this court of the total lack of evidence, or insufficiency of the evidence, to raise an issue of fact as to the location of the east boundary line of the Smith 200-acre tract. A restudy of the case fails to convince us that such an issue of fact was not raised.

The motions for additional findings of fact and for rehearing are therefore overruled.