## CROSBYTON–SOUTH PLAINS RY. CO. v. HUTCHINSON et al.

### No. 5770.

Court of Civil Appeals of Texas. Amarillo. July 21, 1947.

Rehearing Denied Sept. 2, 1947.

Adkins, Pipkin, Madden & Adkins, of Amarillo, Jack M. Randal, of Lubbock, and Terry, Cavin & Mills, of Galveston, for appellant.

Robt. A. Sowder, of Lubbock, for appellees.

STOKES, Justice.

This is an appeal from a judgment non obstante veredicto entered by the court in a consolidated case. The litigation arose by the filing of two suits by the appellees, each being a suit in trespass to try title. One of the suits was filed by the appellees, Lona Owens joined by her husband M. O. Owens, against the appellants, Crosbyton-South Plains Railway Company and South Plains and Santa Fe Railway Company on August 16, 1946, in which the plaintiffs sought to recover portions of lots Nos. 9, 10, 11, and 12 in block No. 64 and portions of lots Nos. 3, 4, and 5 in block No. 133 of the Overton Addition to the city of Lubbock. The other suit was filed on the same day by the appellees, R. B. Hutchinson and G. G. Ingham, against the appellants in which they sought to recover portions of lots Nos. 1, 2, 3, 4, 5, and 6 in block No. 64 of the Overton Addition. Both blocks 64 and 133 were in the north tier of the blocks, as shown by the plat of the addition. Appellants answered in each case by general denial and plea of not guilty and, on September 23, 1946, by agreement of the parties and order of the court, the cases were consolidated and tried as one case.

According to the plat of the addition in existence at the time the deeds were executed, the lots in the north tier of the blocks were 50 feet in width east and west and 195 feet in length north and south, and their north line was the north line of section No. 2 in block O. The portions of the lots involved in this suit consist of 29.6 feet out of each lot, the south line of the strip sued for being 50 feet north of the south line of each lot, thus constituting a strip of land 29.6 feet in width running east and west through all of the lots mentioned.

The Overton Addition was established and platted into lots, blocks, streets and alleys on January 23, 1909 by Dr. M. C. Overton upon a portion of section No. 2 in block O and, according to the record, Dr. Overton and the engineers who surveyed and platted the addition evidently intended to include all of that portion of section No. 2 covered by the addition lying south of the north line of the section or, in other words, they intended that the north line of the addition should be the north line of the

section, and for many years it was thought by everyone dealing with the property that they had done so. It developed later, however, that, in surveying the addition, they fell short of the north line of the section by some thirty feet. Roberts and McWhorter owned the land lying immediately north of section No. 2 and they established an addition thereon which was supposed to join the Overton Addition on the south. Fourth Street in the city of Lubbock was laid out by Roberts and McWhorter on the south side of their addition. The street was 75 feet wide and had for its south line the north line of section No. 2. The strip of land out of section No. 2 that, according to later surveys, was not included in the Overton Addition adjoined Fourth Street, and the distance between Fourth Street and the north line of the Overton Addition was, therefore, approximately 30 feet. Thus it will appear that the strip of land involved in this suit lying near the center of the lots in blocks No. 64 and No. 133, and running east and west through them, is of approximately the same width as the strip lying immediately north of the blocks that was not included in the Overton Addition.

On February 13, 1912, the city council of the city of Lubbock granted to appellant, Crosbyton-South Plains Railway Company, a franchise through the city and the right to appropriate and use Fourth Street as a right of way. At a later date the railroad company established its proposed roadbed by setting stakes in the center and, still later, by grading and otherwise preparing it for the purpose of laying ties, rails and other material necessary for a railroad track. On August 26, 1915, Elizabeth Boyd Cline and her husband, J. F. Cline, sold and conveyed to the appellant, Crosbyton-South Plains Railway Company, portions of lots Nos. 1 to 12 in block No. 64, describing the same as beginning at the northeast corner of the block as shown by the plat of the Overton Addition theretofore established and duly recorded;

"Thence west along the north boundary line of said block, a distance of 600 feet to the northwest corner thereof; thence south along the west boundary line of said block, a distance of 145 feet, more or less, to a point which is distant 100 feet south, meas-

ured at right angles, from the center line of the Crosbyton-South Plains Railroad as the same is now located and staked through said block; thence east along a line parallel to and distant 100 feet south from said center line, a distance of 600 feet to the east boundary line of said block; thence north along said east boundary line, a distance of 145 feet, more or less, to the place of beginning, containing 2.0 acres, more or less."

On August 9, 1911, W. H. Bledsoe and T. T. Price conveyed to the railway company portions of the lots in block No. 133 of the Overton Addition, describing the tract by field notes identical with those used in conveying the portion of block No. 64 except as to the beginning point and distances. It will be noted that the field notes began at the northeast corner of block No. 64 which, according to the plat then in existence and of record, was on the north line of section 2 and the south line of Fourth Street, and ran thence west, along the north line of the block, a distance of six hundred feet, to its northwest corner; thence south a distance of 145 feet, but designated the terminus of that call a point 100 feet south of the center line of the railroad as it was then located and staked through the block. Although a number of witnesses testified that the railroad bed was first staked and then graded, and that its location was plainly visible upon the ground at the time of the trial, we have thoroughly searched the voluminous record before us and have failed to find any satisfactory evidence as to its exact location. Our best deduction from the evidence is that its center line was the south line of Fourth Street which, according to the plat of the Overton Addition, was also the north line of block No. 64. The field notes were specific in establishing the south line of the property conveyed as being parallel to, and distant 100 feet south of, the center line of the railroad as then located. In other words, in running south on the west line of the property conveyed the terminal point was designated as being 100 feet from the center of the railroad which later turned out to be 45 feet short of the distance called for. It is evident that the parties then thought the center of the railroad was 45 feet south of

Fourth Street and ran through the north part of the block. In fact, the field notes so indicate.

On March 19, 1925, E. L. Meredith and wife conveyed to R. B. Hutchinson and G. G. Ingham all of lots Nos. 1 to 6, inclusive, in block No. 64 of the Overton Addition, "save and except that portion of said lots owned by the Crosbyton-South Plains Railway Company," and at later dates appellee, Lona Owens, purchased and acquired the title to all of that portion of the lots in block No. 133 involved in this suit, save and except that portion of such lots as was then owned by the Crosbyton-South Plains Railway Company.

■ As a result of the transactions and conveyances shown by the foregoing statement, appellant, Crosbyton-South Plains Railway Company, became the owner of the north portion of the lots here involved, and the appellees became the owners of the south portion thereof. The question to be decided is whether or not under the deed from Elizabeth Boyd Cline and her husband and the deed from W. H. Bledsoe and T. T. Price, appellant, railway company, procured title to the north 145 feet of the lots described or that portion of such lots only as lies north of a line through them which is 100 feet south of the center of the railroad bed as staked and laid out on the south line of Fourth Street at the time the deeds were executed. The solution of the question depends upon the intention of the parties at the times the respective deeds were executed and since the deeds are plain and unambiguous, the intention of the parties must be determined from the terms of the deeds and by proper interpretation of the field notes contained in them.

Appellants contend the railway company procured the north 145 feet of the lots because in the Cline deed the beginning point of the field notes was at the northeast corner of block No. 64, and in the Bledsoe-Price deed the beginning point was at the northwest corner of block No. 133. They contend that the north lines called for in the deeds ran along the north lines of the blocks and, since the second calls were thence 145 feet south, the deeds constituted a conveyance of all of the lots

lying north of a line running thence east and north to the point of beginning. They say that the limitation in the second calls of the field notes of 100 feet south of the center of the railroad should be ignored because it afterwards turned out that the railroad was not located where it was then thought to be in respect to the lots.

If the lines and corners called for in the deeds had been the only specific description of the property conveyed, or, if we should ignore the call for 100 feet south of the center of the railroad, appellants' contention in this respect would be correct but the field notes specify a definite object as a limitation placed upon the west line of the tract purchased by them in block No. 64 and the east line of the tract in block No. 133. That point was the center of the railroad as it was then staked and located upon the ground, and the limitation on those calls was 100 feet south of that point. We know of no rule by which we would be justified in ignoring the call for the center of the railroad. It was on the ground at the time the deeds were made and the rule is well established and of long standing that calls in a deed for quantities and for courses and distances must yield to calls for lines, corners and objects fixed upon the ground or capable of definite ascertainment. Woods v. Robinson, 58 Tex. 655; Mosley v. Edds, Tex.Civ.App., 80 S.W.2d 401; Carter v. Texas Company, 126 Tex. 388, 87 S.W.2d 1079; Snyder v. Magnolia Petroleum Co., Tex.Civ.App., 107 S.W.2d 603; Chesson v. La Flore, Tex.Civ. App., 191 S.W. 745.

It can not be seriously controverted, we think, that, if a surveyor were given the field notes in these deeds and the duty of locating the property conveyed by them, in accordance with the plat of the Overton Addition existing and of record at the time the deeds were executed, he necessarily would begin the survey at the northeast corner of block No. 64 and run thence west 600 feet, following the north line of the block to its northwest corner. In following the next call, he would be directed by the field notes to run thence south a distance of 145 feet, but he would also be directed to stop when he reached a point on that line which was 100 feet south of the center of the railroad bed as it existed when the deeds were executed. The point called for in the center of the railroad bed, being an artificial object then staked and located, and still capable of definite location, would take precedence over the call for distance of 145 feet and, by the rule announced and adhered to in the cases above cited, and many others, he would be governed and controlled by it. Moreover, he would be directed by the field notes to run the south line from that point, parallel with, and 100 feet from, the center of the railroad bed, east to the east line of the block, thence north to the place of beginning. This would leave out of the area enclosed by the field notes the strip of land involved and, since appellees own all of the land in the lots which lies south of that line, they, and not appellants, are the owners of the land in controversy. The point to be observed by the surveyor would have nothing to do with the question of what an accurate survey, made at a later date, revealed as to the location of the lots and blocks in the Overton Addition. He would be interested only in locating the lines and corners by the artificial objects called for in the field notes. Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317; Diehl v. Zanger, 39 Mich. 601.

We have formed our conclusions and considered these transactions upon the basis of the plat of the Overton Addition which was in existence and properly of record at the time they took place, although the record shows that, in platting the addition, Dr. Overton and the surveyor did not reach the north line of section No. 2 Block O as they evidently intended. We have felt impelled to do this because the strip of land left out of the addition and lying between the north line of the blocks as afterwards located and the north line of the section, is the same land that would have been included in the blocks if the Overton survey had extended to the section line. Moreover, the description of the land purchased by the railroad company was by metes and bounds and the field notes cover the identical land which the railroad company and its grantors intended to be conveyed. The mere fact that it was found, by a survey made many years afterward, that the lots

and blocks in the north tier of the addition did not reach the section line and, as a matter of fact, left out of the addition a strip approximately thirty feet in width is, as we see it, a matter of no consequence.

There are a number of issues raised by the pleadings and the briefs involving the three years statute of limitation and the question of estoppel, but the conclusions we have reached upon the questions discussed make it unnecessary to pass upon them.

We have carefully examined all of the assignments of error and contentions presented by the briefs and, in our opinion, no reversible error is shown. The judgment of the court below will therefore be affirmed.